J. SCOTT CARR (SBN 136706)
scarr@kcozlaw.com
NATHAN D. CHAPMAN (*pro hac vice*)
nchapman@kcozlaw.com
JOSEPH W. OZMER II (*pro hac vice*)
jozmer@kcozlaw.com
RYAN D. WATSTEIN (*pro hac vice*)
rwatstein@kcozlaw.com
KABAT CHAPMAN & OZMER LLP
171 17th Street NW, Suite 1550
Atlanta, GA 30363
Telephone: (404) 400-7300
Facsimile: (404) 400-7333

AMY E. BEVERLIN (SBN 284745)
abeverlin@kcozlaw.com
KABAT CHAPMAN & OZMER LLP
10866 Wilshire Blvd., Suite 1650
Los Angeles, CA 90024
Telephone: (310) 613-7050
Facsimile: (404) 400-7333

*Attorneys for the Time Warner Cable Defendants*

# UNITED STATES DISTRICT COURT IN AND FOR
# THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| L. LUVIANO, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>MULTI CABLE, INC., MOUSA GOLBAHAR, TIME WARNER CABLE INC., TIME WARNER CABLE PACIFIC WEST LLC, TIME WARNER CABLE ENTERPRISES LLC, and Does 1 to 100, inclusive,<br><br>Defendants. | CASE NO. 2:15-cv-05592-BRO-FFM<br><br>Hon. Beverly Reid O'Connell<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF TIME WARNER CABLE DEFENDANTS' MOTION TO DISQUALIFY PLAINTIFF'S COUNSEL AND FOR SANCTIONS**<br><br>[*Notice of Motion and Motion, Declarations of Nathan D. Chapman, Kenneth de Seriere, and Marcelino Cimene, and Proposed Order filed concurrently herewith*]<br><br>Date:   November 21, 2016<br>Time:   1:30 P.M.<br>Place:   Courtroom 14<br>          312 N. Spring Street<br>          Los Angeles, CA 90012 |

# TABLE OF CONTENTS

I.      INTRODUCTION ........................................................................................ 1

II.     FACTUAL BACKGROUND ..................................................................... 4

    A.      Counsel Obtains Thousands of Emails from MCI's Computer
        System Outside the Discovery Process. ............................................. 4

    B.      Counsel Files a Duplicative Action in State Court. ........................... 5

    C.      Plaintiff Fails to Identify Solis or the Opt-Ins in His Rule 26(a)
        Disclosures and Conceals Them Despite TWC's Express
        Requests. ............................................................................................ 6

    D.      Counsel Files FLSA Consent Forms for the 13 Opt-Ins and
        Reveals Previously Undisclosed Witnesses for the First Time. ........... 7

III.    PROCEDURAL BACKGROUND ................................................................ 8

IV.     ARGUMENT AND CITATION OF AUTHORITY ....................................... 8

    A.      The District Court Has Inherent Authority to Disqualify Counsel. ....... 8

    B.      Counsel Should Be Disqualified for Illegally and Improperly
        Accessing and Taking Defendants' Documents. ............................... 10

    C.      Counsel Should Be Disqualified Because They Cannot Fairly
        and Adequately Represent the Class Due to *Two* Conflicts of
        Interest. ............................................................................................ 15

        1.      Plaintiff's Counsel Has a Substantial Conflict of Interest in
            Seeking to Represent *Two* Classes Against the Same
            Defendants in Parallel Proceedings. ........................................ 16

        2.      Plaintiff's Counsel Waited One Year Before Filing FLSA
            Consent Forms on Behalf of the Opt-Ins Creating a Significant
            Conflict in His Representation of the Class. ............................. 18

V.      EVIDENTIARY AND MONETARY SANCTIONS ARE PROPER ................ 20

    A.      Evidentiary Sanctions Are Warranted by Counsel's Misconduct. ...... 20

    B.      Monetary Sanctions Should Also Be Imposed. ................................. 23

VI.     CONCLUSION ...................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. Shell Oil Co. (In re Shell Oil Refinery)*,
  143 F.R.D. 105 (E.D. La. 1992) ........................................................... 13, 20, 21

*Am. Unites for Kids v. Lyon*,
  No. CV 15-2124 PA, 2015 WL 9412099 (C.D. Cal. Dec. 21, 2015) .... 10, 20, 23

*Ashman v. Solectron Corp.*,
  No. C 08-1430 JF (HRL), 2008 WL 5071101 (N.D. Cal. Dec. 1,
  2008) ............................................................................................................ 23

*Baldwin Hardware Corp. v. FankSu Enter. Corp.*,
  78 F.3d 550 (9th Cir. 1996) ............................................................................ 24

*Ex Parte Burr*,
  22 U.S. (9 Wheat) 529 (1824) (Marshall, C.J.) ............................................... 19

*Chambers v. NASCO, Inc.*,
  501 U.S. 32 (1991) .............................................................................. 20, 22, 23

*Chavez v. Lumber Liquidators, Inc.*,
  No. C–09–04812 SC, 2011 WL 809453 (N.D. Cal. March 2, 2011) ................. 19

*City & Cnty. of San Francisco v. Cobra Solutions, Inc.*,
  38 Cal. 4th 839 (2006) ................................................................................. 9, 19

*Clark v. Super. Ct.*,
  196 Cal. App. 4th 37 (2011) .......................................................................... 14

*In re Cnty. of Los Angeles*,
  223 F.3d 990 (9th Cir. 2000) ........................................................................... 8

*Comden v. Super. Ct.*,
  20 Cal. 3d 906 (1978) .................................................................................. 9, 19

*People ex rel Dep't of Corps. v. SpeeDee Oil Change Sys., Inc.*,
  20 Cal. 4th 1135 (1999) ........................................................................... 9, 14, 19

*E.E.O.C. v. Fry's Elecs., Inc.*,
  287 F.R.D. 655 (W.D. Wash. 2012) ........................................................... 23, 24

MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION TO DISQUALIFY AND FOR SANCTIONS

*Erickson v. Newmar Corp.,*
    87 F.3d 298 (9th Cir. 1996) ................................................................. 20

*Facebook, Inc. v. Power Ventures, Inc.,*
    828 F.3d 1068 (9th Cir. 2016) .............................................................. 13

*Fayemi v. Hambrecht & Quist, Inc.,*
    174 F.R.D. 319 (S.D.N.Y. 1997) ..................................................... 20, 24

*Fink v. Gomez,*
    239 F.3d 989 (9th Cir. 2001) ................................................................. 22

*Frye v. Baptist Mem'l Hosp., Inc.,*
    495 F. App'x 669 (6th Cir. 2012) .......................................................... 18

*Gessele v. Jack in the Box, Inc.,*
    6 F. Supp. 3d 1141, 1154 (D. Or. 2014), *as amended* (May 15, 2014) ................................................................................................... 18

*Haeger v. Goodyear Tire & Rubber Co.,*
    813 F.3d 1233 (9th Cir. 2016) .............................................................. 24

*Hanlon v. Chrysler Corp.,*
    150 F.3d 1011 (9th Cir.1998) ............................................................... 15

*Henriksen v. Great Am. Sav. & Loan,*
    11 Cal. App. 4th 109 (1992) ................................................................... 1

*Herrera v. The Clipper Grp., L.P.,*
    No. 97-CIV-560 (SAS), 1998 WL 229499 (S.D.N.Y. May 6, 1998) .... 14, 20, 23

*Jackshaw Pontiac, Inc. v. Cleveland Press Publ'g Co.,*
    102 F.R.D. 183, 1985-1 Trade Cas. (CCH) ¶ 66559, 39 Fed. R. Serv. 2d 811 (N.D. Ohio 1984) ........................................................ 16

*Jackson v. Microsoft Corp.,*
    211 F.R.D. 423 (W.D. Wash. 2002) ...................................................... 10

*Ketchum v. City of Vallejo,*
    523 F. Supp. 2d 1150 (E.D. Cal. 2007) ................................................ 18

*Kurczi v. Eli Lilly & Co.,*
    160 F.R.D. 667 (N.D. Ohio 1995) ........................................................ 17

MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION TO DISQUALIFY AND FOR SANCTIONS

*Lahiri v. Univ. Music & Video Distrib. Corp.*,
606 F.3d 1216 (9th Cir. 2010) ........................................................ 24

*Lahr v. Fulbright & Jaworski, LLP*,
No. 3-84-CV-0981-D, 1995 WL 17816334 (N.D. Tex. Oct. 25, 1995) .......................................................................................... 20, 21

*Lou v. Ma Labs., Inc.*,
No. C 12-05409 WHA, 2014 WL 68605 (N.D. Cal. Jan. 8, 2014) ............ *passim*

*LVRC Holdings LLC v. Brekka*,
581 F.3d 1127 (9th Cir. 2009) ........................................................ 12

*Lynn v. Gateway Unified Sch. Dist.*,
No. 2:10-CV-981-JAM-CMK, 2011 WL 6260362 (E.D. Cal. Dec. 16, 2011) ............................................................................ 10, 11, 13, 23

*In re Mortgage & Realty Trust*,
195 B.R. 740 (Bankr. C.D. Cal. 1996) .............................................. 1

*NovelPoster v. Javitch Canfield Grp.*,
140 F. Supp. 3d 954, 965-67 (N.D. Cal. 2014) ................................ 13

*Ortiz v. Fibreboard Corp.*,
527 U.S. 815 (1999) ........................................................... 2, 9, 16

*Palumbo v. Tele-Commc'ns, Inc.*,
157 F.R.D. 129 (D.D.C. 1994) ................................................ 15, 18

*Perna v. Elec. Data Sys. Corp.*,
916 F. Supp. 388 (D.N.J. 1995) ...................................................... 14

*Pillsbury, Madison & Sutro v. Schectman*,
55 Cal. App. 4th 1279 (1997) ........................................................ 14

Reynaldo Galvez v. Multi Cable, Inc., et al.,
Case No. BC635968 .................................................................... 17

*Richards v. Jain*,
168 F. Supp. 2d 1195 (W.D. Wash. 2001) .................................... 8, 15

*Roadway Express, Inc. v. Piper*,
447 US 752 (1980) ..................................................................... 22

1
2  *Roush v. Seagate Tech., LLC,*
      150 Cal. App. 4th 210 (2007)...............................................................9, 14

3  *Salvador Ruacho v. Multi Cable, Inc., et al.,*
4      Case No. BC602993 ...............................................................................*passim*

5  *Sandoval v. Ali,*
      34 F. Supp. 3d 1031, 1047 (N.D. Cal. 2014) ......................................17
6
7  *In re Snyder,*
      472 U.S. 634 (1985) .................................................................................8
8
9  *Speckman v. Minnesota Min. & Mfg. Co.,*
      7 F. Supp. 2d 1030 (D. Neb. 1997) ...............................................21, 22

10
11 *Sullivan v. Chase Inv. Servs. of Boston, Inc.,*
      79 F.R.D. 246 ...........................................................................................16

12
13 *Symczyk v. Genesis Healthcare Corp.,*
      656 F.3d 189 (3d Cir. 2011) ..................................................................18

14 *Tech Sys., Inc. v. Pyles,*
15     630 F. App'x 184 (4th Cir. 2015)...........................................................12

16 *Terrebonne, Ltd. of Calif. v. Murray,*
17     1 F. Supp. 2d 1050 (E.D. Cal. 1998) ....................................................24

18 *Thifty-Tel, Inc. v. Bezenek,*
      46 Cal. App. 4th 1559 (1996)................................................................12
19
20 *UMG Recordings, Inc. v. MySpace, Inc.,*
      526 F. Supp. 2d 1046 (C.D. Cal. 2007).............................................8, 19

21
22 *United States v. Christensen,*
      801 F.3d 970 (9th Cir. 2015) .................................................................13

23
24 *United States v. Int'l Bhd. of Teamsters,*
      948 F.2d 1338 (2d Cir. 1991) ................................................................23

25
26 *United States v. Nosal,*
      676 F.3d 854 (9th Cir. 2012) .................................................................12

27
28 *United States v. Nosal,*
      930 F. Supp. 2d 1051 (C.D. Cal. 2013).................................................12

MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION TO DISQUALIFY AND FOR SANCTIONS

**Statutes**

18 U.S.C. § 1030 ........................................................................... 12

18 U.S.C. § 2701 ........................................................................... 13

28 U.S.C. § 1927 ........................................................................... 24

Cable Privacy Act of 1984, 47 U.S.C. § 551 .......................... 2, 11

Cal. Civ. Proc. Code § 128 ............................................................ 8

Cal. Lab. Code § 2698, *et seq.* .................................................... 5

Cal. Penal Code § 502 .................................................. 10, 12, 13

**Other Authorities**

Fed. R. Civ. P. 23 ................................................................. 1, 10, 15

Fed. R. Civ. P. 34 ..................................................................... 13, 21

MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION TO DISQUALIFY AND FOR SANCTIONS

# I.   __INTRODUCTION__

Counsel for Plaintiff L. Luviano ("Plaintiff") (collectively referred to herein as "Counsel") have engaged in serious misconduct and other missteps in this case which raise threshold issues about Counsel's qualifications to continue to serve as class counsel in this action.  Given the importance of these issues the Court should address the instant Motion to Disqualify and for Sanctions before addressing the certification motions or otherwise allowing Counsel to continue to litigate on behalf of the putative classes.

Counsel should be disqualified from serving in this case, particularly as class or collective class counsel, because they have engaged in improper and potentially criminal misconduct, have wholly breached their obligations as sworn officers of the Court, and have created disqualifying conflicts with their existing clients and the putative class and collective classes in this case.  Counsel's misconduct—which threatens the public trust in the scrupulous administration of justice and the integrity of these proceedings—disqualifies them from representing Plaintiff or any putative class or collective class in this action.[1]

Specifically, Counsel have engaged in a pattern of conduct that is indisputably incompatible with the faithful discharge of their duties as sworn officers of this Court and as prospective class counsel under Rule 23.

***First***, almost immediately after Plaintiff filed this action, Counsel used the e-mail credentials of a former manager of Defendant Multi Cable, Inc. ("MCI"),

---

[1]  Defendants Time Warner Cable Inc., Time Warner Cable Enterprises LLC, and Time Warner Cable Pacific West LL (collectively, "TWC") move to disqualify each individual attorney purporting to represent Plaintiff and the putative and collective classes in this action as well as the law firms in which those attorneys practice.  *E.g.*, *In re Mortg. & Realty Trust*, 195 B.R. 740, 754 (Bankr. C.D. Cal. 1996) ("The general rule is that an attorney's disqualification to represent a client applies to every attorney in the firm where the disqualified attorney practices."); *Henriksen v. Great Am. Sav. & Loan*, 11 Cal. App. 4th 109, 114 (1992) ("As a general rule in California, where an attorney is disqualified from representation, the entire law firm is vicariously disqualified as well.").

1  Edson Solis, to access MCI's computer system **without MCI's knowledge or**
2  **authorization** and took over 76,000 pages of information.  Significant portions of
3  the data Counsel misappropriated contained personally identifiable information
4  ("PII") of TWC's subscribers that is protected from disclosure under the Cable
5  Privacy Act of 1984.[2]  Astoundingly, Mr. Solis provided Counsel with access to
6  this data, and Counsel entered into MCI's computer system and stole this PII,
7  despite Mr. Solis' testimony that he was fully aware that PII was to be kept
8  confidential and was protected from disclosure under federal law.  In engaging in
9  this misconduct, Counsel violated state and federal law prohibiting unauthorized
10 access to computer systems and the data maintained thereon and, further,
11 improperly circumvented the Federal Rules of Civil Procedure.

12       ___*Second*___, Counsel created **an incurable conflict of interest** between the
13 putative class in this case and the purportedly "aggrieved employees" in a
14 duplicative state court action Counsel filed in December 2015, *Salvador Ruacho v.*
15 *Multi Cable, Inc., et al.*, Case No. BC602993, in the Superior Court of California
16 for the County of Los Angeles.  That is, in the *Ruacho* action, Counsel are
17 pursuing a PAGA claim against Defendants based on the exact same facts,
18 evidence, and law applicable to this case.  The United States Supreme Court has
19 explicitly stated that "an attorney who represents another class against the same
20 defendant may not serve as class counsel."[3]  The reason is simple: When there are
21 different plaintiffs in different actions proceeding at the same time with the same
22 claims, same counsel, and same defendants, there is a substantial risk that class
23 counsel will compromise one class for another.  Further, Counsel has since filed a
24 **third** class action against MCI, again involving overlapping claims and facts.  The

25
26
27  [2] 47 U.S.C. § 551.

28  [3] *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 856 (1999).

substantial risk that Counsel cannot adequately and fairly represent the interests of each class requires their disqualification.

***Third***, Counsel created a second disqualifying conflict of interest between their clients, the class, and themselves when Counsel allowed the statute of limitations to run on the FLSA claims of 13 putative opt-in plaintiffs (the "Opt-Ins") for almost one full year (and, in some cases, over one year) by failing to file the FLSA Consent Forms for the Opt-Ins. That is, although Counsel obtained some of the Consent Forms at issue as early as **June 2015**, Counsel did not file the forms with the Court until **August 19, 2016**, when Plaintiff filed his motions for class and collective action certification along with six declarations from the Opt-Ins. By failing to timely file the Consent Forms, Counsel allowed the statute of limitations to run on the Opt-Ins' FLSA claims (which provides relief in addition to that available under California law, such as liquidated damages), thereby greatly diminishing and, in one case, extinguishing their clients' FLSA claims entirely. Thus, Counsel's gamesmanship has created an incurable conflict between Counsel and the Opt-Ins, who may have claims against Counsel for malpractice.

***Fourth***, in addition to exposing Counsel's malfeasance in sitting on the Consent Forms, Plaintiff's August 19 filings also exposed Counsel's discovery misconduct in failing to disclose the identity of the Opt-Ins, including in (1) Plaintiff's September 18, 2015 Rule 26(a) initial disclosures and (2) in response to TWC's explicit discovery requests for witness contact information. Counsel's bad faith gamesmanship forced TWC to move (successfully) *ex parte* for a 30-day extension of time to depose the concealed declarants in time to respond Plaintiff's class and conditional certification motions (the "Certification Motions").

For these reasons, as set forth more fully herein, TWC respectfully requests that the Court disqualify Counsel from any further participation in this action.

## II.    FACTUAL BACKGROUND

### A.    Counsel Obtains Thousands of Emails from MCI's Computer System Outside the Discovery Process.

On or about July 3, 2015, Mr. Edson Solis executed an FLSA Consent Form provided to him by Counsel and consented to representation by Counsel.[4]  [D.E. 79-16.]  (Deposition of Edson Solis ("Solis Dep.") 46:6-24.)  Solis worked as a supervisor and manager for Defendant MCI, the same entity for which Plaintiff worked as an independent contractor.  (*Id.* 64:2-5, 67:16-68:4.)[5]  By August 2015, Solis was no longer employed by MCI.  (*Id.* 33:17-18, 34:7-11; *see also* Declaration of Marcelino Cimene ("Cimene Decl."), ¶ 3.)

In or around August 2015, after his employment with MCI had ended but before MCI disabled his email account, Solis gave Counsel his MCI e-mail credentials "to enable them to extract data" that he was provided during the course of his employment with MCI.[6]  (Solis Dep. 53:25-54:6, 54:8-22, 55:7-10; *see also* Cimene Decl., ¶ 5; [D.E. 82, ¶ 11].)  Solis understood that he was providing his email credentials to Counsel to allow Counsel to access and obtain data "related to [this] case" from the MCI email account.  (Solis Dep. 56:6-17, 193:21-194:6, 194:18-25, 196:2-14.)  Solis further understood that Counsel was going to extract this data for use in this litigation.  (*Id.* 196:2-14.)

Counsel accessed Solis' MCI email account and downloaded the tens of thousands of e-mails from his account without MCI's knowledge or authorization. (Solis Dep. 197:23-198:10; *see also* Cimene Decl., ¶¶ 6-7.)  On February 19, 2016,

---

[4] Counsel did not file Solis' Consent Form until August 19, 2016.  [D.E. 79-16.]

[5] Relevant excerpts of the Deposition of Edson Solis are attached as Exhibit M to the Declaration of Nathan D. Chapman ("Chapman Decl.").

[6]  Solis testified he believed he was no longer employed by MCI when he provided Counsel with his MCI e-mail credentials.  (Solis Dep. 53:25-54:6, 57:24-58:23.) According to Solis, he still had access to his MCI email account immediately following the end of his employment with MCI, but his access was terminated "shortly after . . . [he] gave the information to [Counsel]."  (*Id.* 58:6-23.)

Plaintiff produced over 76,000 pages of documents, the vast majority of which appeared to be approximately 50,000 emails and attendant data extracted from Solis' MCI email account.  (Chapman Decl., ¶ 8, Ex. F.)  As of the date of this Motion, Plaintiff has not served *any* discovery requests on MCI in the course of discovery that sought the documents and information Counsel misappropriated from MCI.  (*Id.*, ¶ 10, Ex. H.)  Indeed, the only requests for production served by Plaintiff on MCI were served ***after*** Plaintiff had already produced the contents of Solis' MCI email account.  (*See id.* (requests dated March 15, 2016).)

The documents taken by Counsel contain reams of PII from TWC's subscribers, which TWC had shared with MCI pursuant to the Field Installation Services Agreement ("FISA") between the companies to allow MCI to perform residential broadband cable installation services at those TWC subscribers' homes. (Declaration of Kenneth de Seriere ("de Seriere Decl."), ¶ 9.)  Solis received the PII as an MCI supervisor and understood he was required to keep that PII confidential and was prohibited from using or disclosing it under federal law.  (*Id.*, ¶ 8; Solis Dep. 192:13-20, 194:7-195:9.)

## B.    Counsel Files a Duplicative Action in State Court.

On December 7, 2015, over five (5) months after this action was filed, Counsel filed a duplicative action in Los Angeles Superior Court on behalf of Salvador Ruacho (the "*Ruacho* action").[7]  Chapman Decl., ¶ 4, Ex. B.  Ruacho's Complaint asserts a single claim seeking penalties pursuant to California's Private Attorney Generals Act, Cal. Lab. Code § 2698, *et seq.* ("PAGA").  *Id.*  The PAGA claim asserted by Ruacho is *identical* to the PAGA claim asserted by Plaintiff in this action.  [*Compare* Ex. B *with* D.E. 50.]  The significant overlap between this action and the *Ruacho* action is illustrated by the fact that the *Ruacho* Complaint

---

[7]  Ruacho executed an FLSA Consent Form and consented to be a party plaintiff in *this* action on August 23, 2015—three and a half months *before* Counsel filed a duplicative state court action on his behalf.  [D.E. 79-16, at 13.]  As with all of the FLSA consents executed in this action, Ruacho's Consent Form was not filed with this Court for a full year, until August 19, 2016.  [*Id.*]

repeats verbatim (or nearly verbatim) at least 28 paragraphs from the complaint filed in this action.  (Chapman Decl., ¶ 5, Ex. C.)

On January 21, 2016, Plaintiff filed a Notice of Pendency of Other Action in this case.  [D.E. 59.]  The Notice stated that the instant action involves "[a] material part of [the] subject matter" involved in the *Ruacho* action.  [*Id.*]  Given the similarities between the two actions, TWC moved to stay the *Ruacho* action pending the outcome of this action.  (Chapman Decl., ¶ 15.)  The court granted TWC's motion and stayed the *Ruacho* action, including all discovery, over Counsel's objection.  (*Id.*)

C.    **Plaintiff Fails to Identify Solis or the Opt-Ins in His Rule 26(a) Disclosures and Conceals Them Despite TWC's Express Requests.**

Plaintiff served his initial disclosures on September 18, 2015.  (*Id.*, ¶ 3, Ex. A.)  He did not identify any of the Opt-Ins in his disclosures—despite having already received FLSA Consent Forms from five of them:  Edgar Cervantes (June 26, 2015), Eric Medrano (June 26, 2015), Solis (July 3, 2015), Efrain Perez (July 11, 2015), and Ruacho (August 23, 2015).  (*Id.*, ¶¶ 3, 17, Ex. A; *see also* [D.E. 79-16].)

On December 16, 2015, TWC served Interrogatories (Set One) on Plaintiff. (Chapman Decl., ¶ 6, Ex. D.)  Interrogatory No. 1 requested the identities of, and contact information for, every individual with knowledge of the facts of the case or the claims or defenses asserted.  (*Id.*)  On or about January 19, 2016, Plaintiff served responses and objections to TWC's Interrogatories that failed to identify the opt-ins or any other individual witnesses to this action.  (*Id.*, ¶ 7, Ex. E (identifying "All employees of the 'TW Contractors' as defined in the Complaint and Defendants, as well as all of Defendant's customers.").)

On or about March 4, 2016, based on Plaintiff's document production— which included countless emails from Solis' MCI email account—TWC requested that Counsel accept service of a deposition subpoena for Solis.  (*Id.*, ¶12, Ex. J.)

Counsel refused.  (*Id*.)  Two days later, after unsuccessfully attempting to serve Solis based on public information, TWC propounded Interrogatories (Set Two) to Plaintiff and specifically requested Solis' contact information *as well as* the identity of any other individual with whom Plaintiff or Counsel had spoken regarding the facts of this case.  (*Id.*, ¶ 13, Ex. K.)  On or about April 7, 2016, Plaintiff served responses to TWC's Interrogatories (Set Two).  (*Id.*, ¶ 14, Ex. L.)  Plaintiff's responses consisted of boilerplate objections in which he refused to provide the contact information for Solis or anyone else.  (*See id*.)

On April 10, 2016—just three (3) days after refusing to provide Solis' contact information—Counsel obtained a declaration from Solis to be filed in support of Plaintiff's Certification Motions.  [D.E. 82.]  Solis' declaration was filed with this Court on August 19, 2016—over one year after Counsel had obtained an executed FLSA Consent Form from him.  [D.E. 79-16, 82.]

### D.    Counsel Files FLSA Consent Forms for the 13 Opt-Ins and Reveals Previously Undisclosed Witnesses for the First Time.

On August 19, 2016, Plaintiff filed his Certification Motions [D.E. 77, 78] and purported to support those Motions with seven witness declarations.  [*See* D.E. 78 at iii (listing declarations of Solis, Ruacho, Reynaldo Galvez, Medrano, Jose Chavez, Cervantes, and Wilson Rodriguez)];[8] (*see also* Chapman Decl., ¶ 16.) Notably, Plaintiff had obtained the Galvez, Rodriguez, Solis, and Ruacho declarations on April 10 and 13, 2016—just days after refusing to identify or provide contact information for any witnesses in response to TWC's express requests.  [D.E. 82, 85, 87, 90.]  That same day, Plaintiff also disclosed ***for the first time*** the names of the 13 Opt-Ins, including Solis, whom Plaintiff had never disclosed as either witnesses or opt-in plaintiffs in the course of discovery.  [*See* D.E. 79-16, 95.]

---

[8]  Only six of those declarations were actually filed with the Court.  [*See* D.E. 82, 85, 87, 90.]

Plaintiff also requested judicial notice of 13 FLSA Consent Forms for individuals that Plaintiff had never identified in his discovery responses or Rule 26(a) disclosures.[9] [*See* D.E. 79;] (*see also* Chapman Decl., ¶ 17.)  The dated Consents reveal that Plaintiff obtained the first Consent Forms shortly after filing the instant action in June 2015 and obtained more Forms over the course of a year: June 26, 2015, Edgar Cervantes and Eric Medrano; July 3, 2015, Edson Solis; July 11, 2015, Efrain Perez; August 23, 2015, Salvador Ruacho; October 9, 2015, Dario Ramos Gonzalez; November 9, 2015, Tigran Pedrosian; March 21, 2016, Hayk Vardanyan; and April 10, 2016, Reynaldo Galvez and Wilson Rodriguez.  [D.E. 79-16.]  During this same one-year period, Plaintiff served his initial disclosures and responded to two sets of discovery, none of which identified any of the Opt-Ins from whom he had obtained consents.  (Chapman Decl., ¶¶ 3, 7, 14, 16-17.)

## III.    PROCEDURAL BACKGROUND

On August 24, 2016, TWC contacted Counsel regarding Plaintiff's failure to disclose witnesses and requested that Plaintiff either: (1) withdraw the declarations from those witnesses or (2) agree to a 30-day extension to allow TWC to take the witnesses' depositions prior to responding to the Certification Motions.  [D.E. 95-2, ¶ 12.]  The parties met and conferred regarding TWC's extension request over the course of seven days, but Plaintiff's counsel refused to agree to a reasonable extension of time to allow TWC to depose the newly-disclosed witnesses.  [*See* D.E. 95-2, ¶¶ 12-31.].  Accordingly, TWC successfully sought *ex parte* relief from this Court.  [*See generally* D.E. 95; D.E. 101.]

## IV.    ARGUMENT AND CITATION OF AUTHORITY

### A.    The District Court Has Inherent Authority to Disqualify Counsel.

Federal courts apply state law in determining matters of disqualification.  *In re Cnty. of Los Angeles*, 223 F.3d 990, 995 (9th Cir. 2000).  Under California law,

---

[9]  Each of the declarants are Opt-Ins [*see* 79-16] and have retained Plaintiff's Counsel to represent them [*see* D.E. 82, 83, 85, 87, 88, 90].

1  a trial court's authority to disqualify an attorney derives from the power inherent in

2  every court "[t]o control in furtherance of justice, the conduct of its ministerial

3  officers, and of all other persons in any manner connected with a judicial

4  proceeding before it, in every matter pertaining thereto." Cal. Civ. Proc. Code §

5  128(a)(5); *see UMG Recordings, Inc. v. MySpace, Inc.*, 526 F. Supp. 2d 1046,

6  1062 (C.D. Cal. 2007) (applying California law); *see also Richards v. Jain*, 168 F.

7  Supp. 2d 1195, 1200 (W.D. Wash. 2001) (citing *In re Snyder*, 472 U.S. 634, 645

8  n.6 (1985)) ("Federal courts have the authority to discipline attorneys appearing

9  before them for conduct deemed inconsistent with ethical standards.").

10      A motion to disqualify presents a conflict between a client's right to counsel

11  of his choice, on the one hand, and the need to maintain ethical standards of

12  professional responsibility, on the other.  *See City & Cnty. of San Francisco v.*

13  *Cobra Solutions, Inc.*, 38 Cal. 4th 839, 846 (2006); *People ex rel Dep't of Corps. v.*

14  *SpeeDee Oil Change Sys., Inc.*, 20 Cal. 4th 1135, 1145 (1999).  While

15  disqualification necessarily impinges on a litigant's right to counsel of his choice, a

16  court's decision on a disqualification motion "involves more than just the interests

17  of the parties." *SpeeDee*, 20 Cal. 4th at 1145.  Indeed, in ruling on a

18  disqualification motion, "[t]he paramount concern must be to preserve public trust

19  in the scrupulous administration of justice and the integrity of the bar.  The

20  important right to counsel of one's choice must yield to ethical considerations that

21  affect the fundamental principles of our judicial process." *Id.*; *Comden v. Super.*

22  *Ct.*, 20 Cal. 3d 906, 915 (1978) (en banc) (same).

23      Thus, counsel may be disqualified where they have obtained secrets of an

24  adverse party through prior representation of the adversary or where counsel's

25  employee had access to the adversary's confidences while working for opposing

26  counsel.  *See Roush v. Seagate Tech., LLC*, 150 Cal. App. 4th 210, 220 (2007)

27  ("Disqualification is warranted in these cases . . . because the situation implicates

28  the attorney's ethical duty to maintain the integrity of the judicial process.").

9

Counsel may also be disqualified where, as here, counsel seeks to simultaneously represent two classes in separate actions against the same defendant.  *See Lou v. Ma Labs., Inc.*, No. C 12-05409 WHA, 2014 WL 68605, at *2 (N.D. Cal. Jan. 8, 2014) (*citing Ortiz*, 527 U.S. at 856).

The conduct at issue in the cases above pales in comparison to the misconduct engaged in by Counsel in this action, wherein they: (1) violated state and federal law and flouted the discovery rules by using an MCI supervisor's password to access MCI's email system without authorization, downloading over 76,000 pages of information (including massive amounts of PII of TWC's subscribers), and then relying on those improperly obtained documents in the course of this lawsuit; (2) purport to represent two other classes against the same defendants in parallel lawsuits regarding the same claims; and (3) intentionally held FLSA consent forms for 13 opt-in plaintiffs for over one year (allowing the statute of limitations to run on their claims) so they could conceal the identities of those individuals from Defendants.  Each of these instances, *standing alone*, is incompatible with the faithful discharge of Counsel's duties as officers of the Court and as prospective counsel under Rule 23 and thus warrant disqualification.  Taken together, they virtually mandate disqualification.

### B.    Counsel Should Be Disqualified for Illegally and Improperly Accessing and Taking Defendants' Documents.

"Courts have uniformly concluded that parties who engage in intentional wrongful conduct to acquire evidence outside of the discovery process are subject to sanctions."  *Am. Unites for Kids v. Lyon*, No. CV 15-2124 PA (AJWx), 2015 WL 9412099, at *8 (C.D. Cal. Dec. 21, 2015).  "When a party wrongfully obtains documents outside the normal discovery process, a number of different types of sanctions are available. . . . [including] disqualification of counsel."  *Lynn v. Gateway Unified Sch. Dist.*, No. 2:10-CV-981-JAM-CMK, 2011 WL 6260362, at *5 (E.D. Cal. Dec. 16, 2011) (disqualifying counsel who received 39,312 stolen

emails from client, possibly violated section 502 in using information obtained from a computer without permission, and retained emails after learning they had been wrongfully obtained); *see Jackson v. Microsoft Corp.*, 211 F.R.D. 423, 431 (W.D. Wash. 2002) (holding that theft of 10,000 emails from employer, including proprietary information, "was egregious in the extreme" and concluding that "theft on this scale would be sufficient reason to justify dismissal").

*Lynn v. Gateway Unified School District* provides an illustrative example. In *Lynn*, the plaintiff, a former employee of the defendant school district, brought an action for racial discrimination.  2011 WL 6260362, at *1.  Hoping to find emails that would support his case, Lynn accessed the defendant's server and downloaded 39,312 emails.  *Id.* at *2.  Lynn did not have permission or authority to access or take the emails.  *Id.*  Lynn then forwarded the emails to his counsel, who loaded them onto his office computer.  *Id.*  Lynn's counsel proceeded to use the stolen emails in the *Lynn* case as well as a parallel proceeding by a different plaintiff against the same school district.  *Id.*  The Court granted the defendant's motion to disqualify Lynn's counsel on grounds that counsel's maintenance and use of the stolen emails violated the law, as well as his ethical duties.  *Id.* at *6-7.

The instant case is even more egregious than *Lynn* because Counsel did not merely come into possession of stolen emails—Counsel purposely sought out and obtained the emails *themselves*.  Solis has admitted under oath, both in a declaration and in deposition testimony, that he provided his MCI login and password to Counsel so that Counsel could "extract data" from his MCI email account for use in this litigation.  [D.E. 82, ¶ 11]; (Solis Dep. 53:25-54:22, 55:7-10, 56:6-17, 193:21-194:25, 196:2-14.)  On February 19, 2016, Plaintiff subsequently produced over 76,000 pages of emails from Solis' email account.  Chapman Decl., ¶ 8.  In short, Counsel used Solis' login and password to improperly access MCI's email system; downloaded the contents of Solis' MCI email account; and has since

used the documents obtained thereby in this litigation.[10]  Like the plaintiff in *Lynn*, Counsel did not have permission or authority to access MCI's email system or take documents therefrom, and, in wrongfully obtaining documents, Counsel not only deliberately subverted the Rules of Civil Procedure, they violated state and federal laws protecting against unauthorized access of computer data and systems.

Indeed, Counsel's conduct falls ***squarely*** within the conduct prohibited by both the federal Computer Fraud and Abuse Act ("CFAA") and California's Comprehensive Data Access and Fraud Act ("CDAFA").[11]  Under CFAA, "[w]hoever . . . intentionally accesses a computer without authorization . . . and thereby obtains . . . information from any protected computer" is criminally liable. *18 U.S.C. § 1030(a)(2)(C)*; *see United States v. Nosal*, 676 F.3d 854, 859 (9th Cir. 2012) (term "protected computer" includes "effectively all computers with Internet access").  "[A] person who uses a computer 'without authorization' has no rights, limited or otherwise, to access the computer in question." *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1133 (9th Cir. 2009).  Here, Counsel accessed MCI's computers ***without MCI's knowledge or permission*** to download Mr. Solis's emails from those computers and, in doing so, "intentionally access[ed] a computer without authorization" and obtained information therefrom.  *Id.*  Under Ninth

---

[10]  Among the over 76,000 pages downloaded by Plaintiff's counsel are documents containing the PII of TWC subscribers, which was provided in confidence to MCI to allow MCI to provide installation services to those customers.  de Seriere Decl., ¶¶ 5, 8, Ex. 1.  Such information is protected from disclosure under the Cable Privacy Act, 47 U.S.C. § 551(c), and designated as Confidential pursuant to the Protective Order entered in this case [D.E. 63].

[11]  In violating both federal and state laws, Counsel also failed to fulfill their duties "[t]o support the . . . laws of the United States and of this state [California]" in contravention of section 6068 of California's Business and Professions Code.

Circuit precedent, Counsel's conduct was "hacking" and is exactly the kind of conduct that CFAA was meant to criminalize.[12]  *See Nosal*, 676 F.3d at 857-58.

Counsel also violated California's CDAFA, Cal. Penal Code § 502.  Section 502 of the CDAFA imposes liability on any person who "[k]nowingly accesses and without permission takes, copies, or makes use of any data from a computer, computer system, or computer network, or takes or copies any supporting documentation, whether existing or residing internal or external to a computer, computer system, or computer network."  *Id.* § 502(c)(2).  This statute is different than CFAA because it "does not require unauthorized access.  It merely requires knowing access."  *United States v. Christensen*, 801 F.3d 970, 994 (9th Cir. 2015). However, "despite differences in wording," the analysis under both statutes is similar.  *Facebook, Inc. v. Power Ventures, Inc.*, 828 F.3d 1068, 1079 (9th Cir. 2016).  Counsel has not denied, and cannot deny, that they did not have permission to access MCI's computer system *at all*.  *See* Cimene Decl., ¶¶ 6-7.  Despite that understanding, Counsel knowingly accessed and without permission took, copied, and made use of MCI's *and* TWC's data, violating section 502.  *See Facebook*, 828 F.3d at 1079; *NovelPoster v. Javitch Canfield Grp.*, 140 F. Supp. 3d 954, 965-67 (N.D. Cal. 2014) (access to online accounts by unauthorized user through use of valid password is unauthorized access under section 502); *see also Lynn*, 2011 WL 6260362, at *6 ("In taking emails without permission . . . [Plaintiff] possibly

---

[12] *See United States v. Nosal*, 930 F. Supp. 2d 1051, 1061-62 (C.D. Cal. 2013) (defendant acted "without authorization" under CFAA by using username and password of former assistant to access company's computer database); *see also Tech Sys., Inc. v. Pyles*, 630 F. App'x 184, 186 (4th Cir. 2015) (employee who accessed her corporate email account after termination did so without authorization and in violation of CFAA); *Thifty-Tel, Inc. v. Bezenek*, 46 Cal. App. 4th 1559, 1564 (1996) (use of computer access code to gain access to company's computer system without authorization was "hacking").

1  violated [section 502].”); *id.* (“[Counsel] possibly violated [section 502], making it

2  a felony to use information from a computer database without permission.”).[13]

3      Moreover, Counsel’s conduct also demonstrates a blatant disregard for the

4  Federal Rules.  Plaintiff could have requested the wrongfully-obtained documents

5  through the normal discovery process.  *E.g.*, Fed. R. Civ. P. 34.  When Counsel

6  accessed MCI’s computer system in or around August 2015, this action was

7  already pending before the Court.  [D.E. 1.]  Counsel affirmatively chose hacking

8  over proper discovery, circumventing the entire discovery process and preventing

9  Defendants from being able to argue against production or otherwise protect

10  against disclosure of PII.  *See Adams v. Shell Oil Co. (In re Shell Oil Refinery),*

11  *143 F.R.D. 105, 108 (E.D. La. 1992)* (using employee to obtain documents in

12  which defendant had propriety interest, thus circumventing protections of

13  discovery process, “was inappropriate and contrary to fair play”).  Further, Plaintiff

14  has since relied on the documents illegally obtained by Counsel, not requesting ***a***

15  ***single document*** from MCI in discovery.  Counsel’s conduct “evidences a willful

16  and improper design to avoid the rules of discovery and gain an unpermitted

17  advantage.”  *Perna v. Elec. Data Sys. Corp.*, 916 F. Supp. 388, 400 (D.N.J. 1995).

18      Finally, when Counsel knowingly accessed MCI’s computer system ***without***

19  ***permission*** and pilfered over 76,000 pages of emails and data, they violated their

20  obligations to “preserve public trust in the scrupulous administration of justice and

21  the integrity of the bar.”  *SpeeDee*, 20 Cal. 4th at 1145; *see Pillsbury, Madison &*

22  *Sutro v. Schectman*, 55 Cal. App. 4th 1279, 1288 (1997) (“The fact counsel still

23  conduct much pretrial preparation and discovery without judicial assistance does

24  not mean parties to litigation can operate outside the applicable parameters of the

25  [discovery rules] or may violate other laws . . . in their zeal to pursue litigation.”);

26  ───────────────

27  [13]  In taking emails without permission, Counsel may have also violated 18 U.S.C.
    § 2701, “which provides it is a federal offense to intentionally exceed authorization

28  to access electronic communication.”  *Lynn*, 2011 WL 6260362, at *6.

*Herrera v. The Clipper Grp., L.P.*, No. 97-CIV-560 (SAS), 1998 WL 229499, *2 (S.D.N.Y. May 6, 1998) ("The discovery process is not meant to be supplemented by the unlawful conversion of an adversary's proprietary information."). Counsel's strategy to improperly and illegally obtain documents and information outside the purview of the Federal Rules, and in violation of state and federal law, amounts to an indefensible dereliction of their duties to maintain the integrity of these proceedings.

Because the instant situation directly implicates the public's confidence in the integrity of the judicial process, disqualification of Counsel is appropriate. *See Roush*, 150 Cal. App. 4th at 219 (disqualification warranted where counsel obtains "secrets" of adverse party because situation "implicates the attorney's ethical duty to maintain the integrity of the judicial process"); *Clark v. Super. Ct.*, 196 Cal. App. 4th 37, 55 (2011) (affirming disqualification, in part, because "inevitable questions about the sources of [counsel's] knowledge . . . could undermine public trust and confidence" in legal process); *Richards*, 168 F. Supp. 2d at 1200 (alteration in original) ("Where the 'asserted course of conduct by counsel threatens to affect the integrity of the adversarial process, [the court] should take appropriate measures, including disqualification, to eliminate such taint.'").

## C. Counsel Should Be Disqualified Because They Cannot Fairly and Adequately Represent the Class Due to *Two* Conflicts of Interest.

Federal Rule of Civil Procedure 23(a)(4) requires that the representative parties, *including counsel*, "fairly and adequately protect the interests of the class." This is a threshold inquiry "**so important** that the rule requires consideration of '*any other matters* pertinent to counsel's ability to fairly and adequately represent the interests of the class.'" *Lou*, 2014 WL 68605, at *1-2 (emphasis added). According to the Ninth Circuit, "[r]esolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their

counsel prosecute the action vigorously on behalf of the class?" *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir.1998).

Here, the inquiry ends at the first question because Counsel's inadequate representation has resulted in ***two, independent conflicts of interest*** with putative class members, such that Plaintiff's Counsel cannot fairly and adequately represent the interests of the putative class or collective class in this action. *See Lou*, 2014 WL 68605, at *2. The fact that Plaintiff's counsel seeks to represent a statewide class of plaintiffs "makes the decision to disqualify even more compelling." *Palumbo v. Tele-Commc'ns, Inc.*, 157 F.R.D. 129, 132–33 (D.D.C. 1994).

**1.** Plaintiff's Counsel Has a Substantial Conflict of Interest in Seeking to Represent *Two* Classes Against the Same Defendants in Parallel Proceedings.

The adequacy of representation inquiry is concerned not only with a plaintiff's adequacy, but also with "the 'competency and conflicts of class counsel.'" *Ortiz*, 527 U.S. at 856 n.31. To this end, the Supreme Court has noted that "an attorney who represents another class against the same defendant may not serve as class counsel." *Id.* at 856 (citation omitted). Indeed, as one prominent treatise has stated, "Courts have consistently held that counsel cannot simultaneously represent a class and prosecute either individual or class claims against the same defendants in a different proceeding, even if there is partial overlap among the plaintiffs or class members in the cases." 1 McLaughlin on Class Actions 4:39 (10th ed.).[14] This is because, "[w]hen there are different

---

[14] *See, e.g.*, *Jackshaw Pontiac, Inc. v. Cleveland Press Publ'g Co.*, 102 F.R.D. 183, 1985-1 Trade Cas. (CCH) ¶ 66559, 39 Fed. R. Serv. 2d 811 (N.D. Ohio 1984) (proposed counsel inadequate to represent class where he also served as counsel for different set of plaintiffs in state court action against same defendants); *Sullivan v. Chase Inv. Servs. of Boston, Inc.*, 79 F.R.D. 246, Fed. Sec. L. Rep. (CCH) P 96759 (N.D. Cal. 1978) (declining to certify class where counsel engaged in parallel action which might reduce funds available to proposed class).

1  plaintiffs in different actions proceeding at the same time with the same claims,

2  same counsel, and same defendants, the risk of counsel compromising one class for

3  another is intensified." *Lou*, 2014 WL 68605, at *2.

4      Here, Plaintiff's Counsel are seeking to represent this class while

5  simultaneously purporting to represent *two* other classes against the Defendants.

6  Plaintiff has filed a Notice of Pendency of Other Action (the *Ruacho* action) in this

7  case, acknowledging that the instant action involves a "material part of [the]

8  subject matter" of the *Ruacho* action.  [D.E. 59.]  In fact, Salvador Ruacho, an opt-

9  in plaintiff in this action [*see* D.E. 79-16, 90], is the named plaintiff in the *Ruacho*

10  action.  [*See* D.E. 59, 2:2.]  This action and *Ruacho* involve the same plaintiffs'

11  counsel, the same defendants, and substantially similar claims and evidence.[15]  *See*

12  *Lou*, 2014 WL 68605, at *2.  Both actions involve allegations for, *inter alia*, failure

13  to pay overtime, failure to provide meal and rest periods, failure to provide

14  itemized wage statements, and failure to pay wages due.  (Chapman Decl., ¶ 4, Ex.

15  B.)  Indeed, at least twenty-eight (28) paragraphs in the respective complaints are

16  virtually identical.  (*Id.*, ¶ 5, Ex. C.)

17      Moreover, Counsel has since filed a third class action against MCI on behalf

18  of current and former MCI ITs, again involving similar claims and allegations:

19  *Reynaldo Galvez v. Multi Cable, Inc., et al.*, Case No. BC635968.  (*Id.*, ¶ 19, Ex.

20  N.)  The named plaintiff in this third class action (Galvez) is an opt-in plaintiff in

21  *this* action [D.E. 79-16, 87] and a prospective aggrieved employee in the *Ruacho*

22  action.  *Lou*, 2014 WL 68605, at *2.  Like those that came before it, this third class

23  action alleges that Galvez and the putative class members were not paid overtime,

24  were not provided meal and rest periods, and did not receive adequate wage

25  statements (though these allegations are nestled under a single cause of action for

26

27  _____

    [15]  Indeed, Counsel claimed that all documents produced in *this* action should be

28  "consider[ed] . . . as also produced in the Ruacho PAGA litigation in state court."
    Chapman Decl., ¶ 11, Ex. I.

17

1  failure to provide adequate wage statements).  (Chapman Decl., ¶ 19, Ex. N.)

2  Counsel's conflict is compounded by the fact that each of the three classes is

3  comprised of different groups of individuals.

4        In circumstances such as these, "Defendants have an [obvious] incentive to

5  settle all claims at once . . . thereby creating opportunities for counsel to

6  manipulate the allocation of settlement dollars." *Lou*, 2014 WL 68605, at *2.  The

7  risk of Counsel compromising one class for another cannot be ignored here.  *See*

8  *id.*; *Kurczi v. Eli Lilly & Co.*, 160 F.R.D. 667, 679 (N.D. Ohio 1995)

9  (representation inadequate where every decision to hasten or delay litigation on

10  behalf of one set of plaintiffs "could alternately harm or benefit the other set of

11  plaintiffs" and, "to the extent that the currently-named plaintiffs in [case] are also

12  plaintiffs in [another case], the absent class members are at great risk of being sold

13  out").  Plaintiff's counsel has a "material and presently manifest" conflict and,

14  therefore, cannot fairly and adequately protect the interests of the class in *this*

15  action.  *See Sandoval v. Ali*, 34 F. Supp. 3d 1031, 1047 (N.D. Cal. 2014).  As such,

16  Plaintiff's counsel should be disqualified from serving as class counsel here.  *See,*

17  *e.g.*, *Lou*, 2014 WL 68605, at *2 (disqualifying counsel based on conflict inherent

18  to representing two parallel classes); *see also Palumbo*, 157 F.R.D. at 132–33 ("If

19  [counsel] were representing only an individual plaintiff, he could conceivably seek

20  a written waiver of conflict of interest.  But in this case, [counsel] seeks to

21  represent a large, unenumerated and as yet unidentified class of plaintiffs.

22  Unidentified class members cannot waive a potential conflict of interest.").

23        **2.**     **Plaintiff's Counsel Waited One Year Before Filing FLSA**

24              **Consent Forms on Behalf of the Opt-Ins Creating a Significant**

25              **Conflict in His Representation of the Class.**

26        As shown above, within days after filing this action Plaintiff's counsel began

27  gathering consents to join from other individuals.  Between June 26, 2015 and

28  April 10, 2016, counsel obtained FLSA Consent Forms from 13 individuals.  [D.E.

18

79-16.] Counsel's failure to file the consents for, in some cases, over one year creates a conflict with these opt-in plaintiffs, as they have lost part of their claims.

Federal courts agree that, for statute of limitations purposes, collective actions are "commenced" on the date when a party plaintiff files his written consent to become a party plaintiff. *E.g.*, *Frye v. Baptist Mem'l Hosp., Inc.*, 495 F. App'x 669, 675 (6th Cir. 2012); *Symczyk v. Genesis Healthcare Corp.*, 656 F.3d 189, 200 (3d Cir. 2011); *Gessele v. Jack in the Box, Inc.*, 6 F. Supp. 3d 1141, 1154 (D. Or. 2014), *as amended* (May 15, 2014) (collecting cases). **For each opt-in plaintiff, however, "the action commences only upon filing of a written consent,"** *Symczyk*, 656 F.3d at 200, and thus, "**the statute of limitations will continue to run until Plaintiffs file their consent to sue forms with [the] court**." *Ketchum v. City of Vallejo*, 523 F. Supp. 2d 1150, 1159 (E.D. Cal. 2007). Further, "subsequent written consents do not relate back to the filing of a complaint for purposes of the statute of limitations." *Frye*, 495 F. App'x at 676 (collecting cases).

Here, despite this well-delineated requirement, Counsel held onto the Opt-Ins' FLSA Consent Forms for, in some cases, over one year before filing them, allowing the statute of limitations on their FLSA claims to continue to run and thus limiting the potential monetary recovery on those claims. Thus, because the Opt-Ins have lost part (and in one case all) of their FLSA claims due to Counsel's gamesmanship in failing to timely file their Consent Forms, Counsel have a potential conflict with the Opt-Ins. *See, e.g.*, *Chavez v. Lumber Liquidators, Inc.*, No. C–09–04812 SC, 2011 WL 809453, at *3 & n.5 (N.D. Cal. March 2, 2011) (suggesting counsel's failure to file written consent may create conflict between counsel and plaintiff whose recovery was reduced).

\* \* \*

While the power to disqualify an attorney from a case "is one which ought to be exercised with great caution," it is "incidental to all courts, and is necessary for the preservation of decorum, and for the respectability of the profession." *Ex Parte*

19

1   *Burr*, 22 U.S. (9 Wheat) 529, 529–30 (1824) (Marshall, C.J.).  Here, Plaintiff's

2   right to retain counsel of his choice is outweighed ***significantly*** by society's need

3   for the orderly administration of justice and the ethical practice of law.  *Comden*,

4   *20 Cal. 3d at 915*; *see Cobra Solutions*, 38 Cal. 4th at 846; *SpeeDee*, 20 Cal. 4th at

5   *1145*.  Counsel are not the only attorneys available to represent Plaintiff, nor can

6   Plaintiff demonstrate any distinctive value of Counsel's services over those to be

7   rendered by different firms that are of good quality.  *See Comden*, 20 Cal. 3d at

8   *915*.  Under the circumstances of this case, and to reestablish the integrity of these

9   proceedings, Counsel should be discharged from further participation in the case.

10  *See SpeeDee*, 20 Cal. 4th at 1145; *UMG Recordings*, 536 F. Supp. 2d at 1063.

11

12  **V.    EVIDENTIARY AND MONETARY SANCTIONS ARE PROPER**

13      **A.    Evidentiary Sanctions Are Warranted by Counsel's Misconduct.**

14      Federal courts have inherent power to manage their own proceedings and

15  control the conduct of those who appear before them.  *Erickson v. Newmar Corp.*,

16  *87 F.3d 298, 303 (9th Cir. 1996)*; *see Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-

17  *45 (1991)* (court vested with inherent power to manage own affairs "to achieve the

18  orderly and expeditious disposition of cases").  To this end, "[d]istrict judges have

19  an arsenal of sanctions they can impose for unethical behavior."  *Erickson*, 87 F.3d

20  *at 303*.  This arsenal includes the imposition of evidentiary sanctions on persons

21  who use or rely upon information improperly obtained outside the normal course

22  of discovery.  *See, e.g.*, *In re Shell Oil Refinery*, 143 F.R.D. at 109; *Am. Unites for*

23  *Kids*, 2015 WL 9412099, at *7; *Herrera*, 1998 WL 229499, at *1.

24      In the instant case, evidentiary sanctions are warranted against Plaintiff to

25  prevent him from reaping the benefits of improperly and illegally obtained

26  documents.  Such sanctions should include an order: (1) requiring the return of all

27  documents wrongfully obtained from MCI's computer system and all materials

28  derived therefrom; and (2) precluding Plaintiff from using any such documents or

any facts derived therefrom in any manner in this action.  *See, e.g.*, *Fayemi v. Hambrecht & Quist, Inc.*, 174 F.R.D. 319, 324 (S.D.N.Y. 1997) ("[A] court must be able to sanction a party that seeks to introduce improperly obtained evidence; otherwise the court, by allowing the wrongdoer to utilize the information in litigation before it, becomes complicit in the misconduct.").

Case law fully supports the imposition of such sanctions.  For example, in *Fayemi*, the plaintiff, following his termination, entered his former employer's offices and stole information relating to employee bonuses.  *Id.* at 324.  The court found that it had the inherent power to sanction the plaintiff who attempted "to use in litigation material obtained outside the discovery process."  *Id.*  The *Fayemi* court precluded the plaintiff from using the stolen information.  *Id.* at 325.

Similarly, in *Lahr v. Fulbright & Jaworski, LLP*, No. 3-84-CV-0981-D, 1995 WL 17816334 (N.D. Tex. Oct. 25, 1995), the Court precluded the plaintiff from using personal notes taken by a paralegal from a partner's locked closet:

> [P]laintiff's use of the notes poses a threat to the integrity of this judicial proceeding and the administration of justice.  To permit the utilization of these notes for any purpose in this case would reward malfeasant conduct and encourage the use of the subversive tactics employed to obtain the notes.  Moreover, permitting the use of the . . . notes would unfairly disadvantage the defendant and counsel who have been following the proper procedures and rules of professionals.

*Id.* at *3.

Evidentiary sanctions were similarly imposed in *In re Shell Oil Refinery*, where the plaintiff obtained Shell's documents from an unidentified Shell employee.  143 F.R.D. 105.  The court held that, while the plaintiff may have been entitled to discuss the case with the Shell employee, obtaining the documents at issue violated the ethical rules and warranted the imposition of sanctions: "The problem here is that the [plaintiff] has not just communicated with a Shell

1  employee, but has ***surreptitiously obtained*** from this employee proprietary

2  documents belonging to Shell," and the plaintiff's "receipt of Shell's proprietary

3  documents in this manner was inappropriate and contrary to fair play."  143 F.R.D.

4  at 108 (emphasis added).  The court prohibited the plaintiff from using the

5  documents.  *Id.* at 109.

6         In *Speckman v. Minnesota Min. & Mfg. Co.*, 7 F. Supp. 2d 1030 (D. Neb.

7  1997), the district court addressed similar improper self-help and precluded the use

8  of an improperly obtained document as evidence at trial.  While participating in

9  depositions at the defendant's facility, the plaintiff and his counsel surreptitiously

10  removed a job announcement from a bulletin board before leaving the plant.  The

11  court found that taking the document from the bulletin board violated the intent of

12  Rule 34:

13         Misappropriating documents from an opponent or its lawyers violated

14         the Federal Rules of Civil Procedure, which require that requests for

15         production of documents "shall" be made by serving a request on

16         opposing counsel.

17  *Id.* at 1031-32.  The court found that this circumvention of the Rules was "not to be

18  taken lightly" and noted that whether the document was cumulative or irrelevant

19  was not important but that the abuse of the discovery process had to be punished.

20  *Id.* at 1032 ("Thus no matter how insignificant or harmless plaintiff's counsel may

21  wish to paint the incident, it is indeed serious.").

22         The conduct at issue in the instant matter is even more egregious than any of

23  the above-discussed cases where evidentiary sanctions were issued.  Here, Counsel

24  improperly accessed MCI's computer system without permission and pilfered tens

25  of thousands of pages of documents from that system, including proprietary

26  information belonging to TWC.  As such, the Court should impose evidentiary

27  sanctions, including: (1) precluding Plaintiff from using as evidence any

28  information or materials from MCI's computer system, or receiving any benefit

22

1    whatsoever from Counsel's unauthorized acquisition and use of these documents;

2    and (2) ordering Plaintiff to return immediately any and all copies of the purloined

3    materials (including any notes, summaries, compilations, indexes, charts, graphs or

4    other written documents based upon, relating to or derived therefrom).

5              **B.    Monetary Sanctions Should Also Be Imposed.**

6              A district court's inherent power to discipline attorneys that appear before it

7    includes the imposition of fee-based sanctions against attorneys who engage in

8    "bad faith" conduct or conduct "tantamount to bad faith." *Fink v. Gomez*, 239 F.3d

9    989, 993-94 (9th Cir. 2001); *see Roadway Express, Inc. v. Piper*, 447 US 752, 764-

10   66 (1980) (federal courts have inherent power to assess attorneys' fees against

11   counsel).  "Bad faith" conduct includes a broad range of "willful" misconduct,

12   including delaying or disrupting the litigation or taking actions for an improper

13   purpose. *Fink*, 239 F.3d at 992-94 (citing *Chambers*, 501 U.S. at 45-46 & n.10).

14   Here, Counsel's deliberate subversion of the discovery rules in secretly

15   misappropriating tens of thousands of pages of documents, many of which

16   contained clearly confidential information, inarguably falls within the scope of

17   "bad faith" conduct. *Accord Herrera*, 1998 WL 229499, at *3.

18             It is apparent from the circumstances (as detailed above) that Counsel were

19   motivated by a desire to evade the discovery process in order to gain a tactical

20   advantage in this litigation when they improperly and illegally accessed MCI's

21   computer system and downloaded tens of thousands of documents for use in this

22   litigation. *See, e.g.*, *United States v. Int'l Bhd. of Teamsters*, 948 F.2d 1338, 1345

23   (2d Cir. 1991) (acts are sanctionable when they are "entirely without color, and are

24   taken for reasons of harassment or delay or for other improper purposes").  Here,

25   there can be no dispute that Counsel engaged in such ***knowing*** actions for an

26   improper purpose, and such conduct is sanctionable. *See Herrera*, 1998 WL

27   229499, at *3; *E.E.O.C. v. Fry's Elecs., Inc.*, 287 F.R.D. 655, 658 (W.D. Wash.

28   2012).  Indeed, federal courts have consistently concluded that Counsel's

1    conduct—"intentional wrongful conduct to acquire evidence outside of the

2    discovery process"—is subject to sanctions.  *See, e.g.*, *Am. Unites for Kids*, 2015

3    WL 9412099, at *8 (collecting cases) ("[P]arties are subject to sanctions . . . when

4    they acquire evidence in an illegal or otherwise wrongful manner."); *Lynn*, 2011

5    WL 6260362, at *5 ("number of different types of sanctions are available" when

6    party wrongfully obtains documents outside normal discovery process, including

7    monetary sanctions); *Ashman v. Solectron Corp.*, No. C 08-1430 JF (HRL), 2008

8    WL 5071101, at *2 (N.D. Cal. Dec. 1, 2008) (same).

9         The significant legal fees and costs incurred by TWC in bringing the instant

10   Motion (as well as its earlier *ex parte* application) are directly attributable to

11   Counsel's improper conduct.  *See Chambers*, 501 U.S. at 46 (imposition of

12   monetary sanctions serves dual purpose of "vindicating judicial authority" and

13   "making prevailing party whole for expenses caused by his opponent's

14   obstinacy"); *see, e.g.*, *Fry's Elecs.*, 287 F.R.D. at 660 (assessing monetary

15   sanctions to offset excess costs caused by discovery violations, punish

16   unacceptable behavior, and deter future bad conduct); *Terrebonne, Ltd. of Calif. v.*

17   *Murray*, 1 F. Supp. 2d 1050, 1077 (E.D. Cal. 1998) (assessing monetary sanctions

18   against disqualified attorneys pursuant to local rules, § 1927, and court's inherent

19   power to partially compensate moving party for fees incurred in litigating

20   disqualification).  Accordingly, TWC respectfully requests that this Court impose

21   monetary sanctions against Counsel and order Counsel to reimburse TWC for all

22   fees and costs incurred as a result of Counsel's conduct (i.e., TWC's prior *ex parte*

23   application, this Motion, and investigation costs).  *See Haeger v. Goodyear Tire &*

24   *Rubber Co.*, 813 F.3d 1233, 1246 (9th Cir. 2016) ("A primary aspect of [district

25   court's discretion to levy fee-based sanctions] is to fashion an appropriate sanction

26   for conduct which abuses the judicial process."); *see also Fayemi*, 174 F.R.D. at

27   342 ("[A] court must be able to sanction a party that seeks to introduce improperly

28

24

1  obtained evidence; otherwise the court, by allowing the wrongdoer to utilize the

2  information in litigation before it, becomes complicit in the misconduct.").[16]

3  **VI.    CONCLUSION**

4          Accordingly, TWC respectfully requests that the Court enter an order:

5      (1)    Disqualifying Counsel from representing Plaintiff in this action;

6      (2)    Precluding Plaintiff from using as evidence in this case any

7              information or materials obtained from Counsel's unauthorized

8              acquisition of documents, including TWC's confidential data;

9      (3)    Requiring Plaintiff and his counsel to return immediately any and all

10             copies of materials or documents obtained from MCI's computer

11             system (including any notes, summaries, charts, indexes, graphs, or

12             other documents relating to or derived from such documents); and

13     (4)    Requiring Plaintiff's counsel to reimburse TWC for all costs,

14             including attorneys' fees, incurred in responding to their improper

15             conduct.

16 Dated:  October 19, 2016              KABAT CHAPMAN & OZMER LLP

17                                        By:    _/s/ Nathan D. Chapman_____

18 _____

[16] The Court may also, or alternatively, assess fees against Counsel pursuant to 28
19 U.S.C. § 1927, which provides that "[a]ny attorney . . . who so multiplies the
   proceedings in any case unreasonably and vexatiously may be required by the
20 court to satisfy personally the excess costs, expenses, and attorneys' fees
   reasonably incurred because of such conduct."  *See Lahiri v. Univ. Music & Video*
21 *Distrib. Corp.*, 606 F.3d 1216, 1219 (9th Cir. 2010) ("[r]ecklessness suffices for §
   1927 sanctions"); *Baldwin Hardware Corp. v. FankSu Enter. Corp.*, 78 F.3d 550,
22 561 (9th Cir. 1996) ("knowing or reckless conduct" meets "bad faith" standard
   under § 1927).  Here, Counsel's unrelenting pattern of improper conduct has
23
   indubitably and unreasonably multiplied these proceedings—from TWC's *ex parte*
24 motion after Counsel deliberately concealed witnesses to the instant motion
   stemming from Counsel's purposeful evasion of the discovery rules—such that
25 sanctions pursuant to § 1927 are warranted.  *See, e.g., Fry's Elecs.*, 287 F.R.D. at
26 658 (noting that § 1927 applied to litigant's overall discovery tactics, including late
   disclosures, which made it difficult for plaintiffs to pursue claims, multiplied
27 proceedings, and significantly increased costs of prosecuting action).

28