# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| Case No. | **CV 15-05592 BRO (FFM)** | Date | January 3, 2017 |
|----------|---------------------------|------|-----------------|
| Title | **L. LUVIANO V. MULTI CABLE, INC. ET AL** | | |

Present: The Honorable    **BEVERLY REID O'CONNELL, United States District Judge**

| Renee A. Fisher | Not Present | N/A |
|-----------------|-------------|-----|
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiff: | Attorneys Present for Defendant: |
|----------------------------------|----------------------------------|
| Not Present | Not Present |

**Proceedings:**     (IN CHAMBERS)

## ORDER RE PLAINTIFF'S MOTION FOR CERTIFICATION OF A CLASS ACTION, PLAINTIFF'S MOTION FOR ORDER GRANTING CERTIFICATION OF A COLLECTIVE ACTION, AND DEFENDANTS' MOTION TO STRIKE THE DECLARATION OF EVELYN CARLSON [78][77][104]

Pending before the Court are three motions: (1) Plaintiff Luis Luviano's ("Plaintiff" or "Luviano") Motion for Certification of a Class Action, (Dkt. No. 78 ("Class Action Motion")); (2) Plaintiff's Motion for Order Granting Certification of a Collective Action, (Dkt. No. 77 ("Collective Action Motion")); and, (3) Defendants Time Warner Cable Inc., Time Warner Cable Pacific West LLC, and Time Warner Cable Enterprises LLC's (collectively, "TWC Defendants") Motion to Strike the Declaration of Evelyn Carlson, (Dkt. No. 104 ("MTS" or "Motion to Strike")). The Court held a hearing on these matters on November 21, 2016. After considering the parties' papers, the deposition testimonies, and the declarations, the Court **GRANTS in part** Plaintiff's Class Action Motion, **GRANTS** Plaintiff's Collective Action Motion, and **GRANTS in part** TWC Defendants' Motion to Strike.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 15-05592 BRO (FFM) | Date | January 3, 2017 |
|----------|-----------------------|------|-----------------|
| Title | L. LUVIANO V. MULTI CABLE, INC. ET AL | | |

## I.   BACKGROUND

### A.   Factual Background

This action arises from a compensation dispute between Plaintiff Luis Luviano[1] ("Plaintiff" or "Luviano"), Defendant Multi Cable, Inc. ("MCI"), and the TWC Defendants.  (Dkt. No. 50, First Amended Complaint ("FAC") ¶ 4.)

#### 1.   The Parties

Plaintiff Luis Luviano (aka "Lamberto Serrano Silva") is an individual who, at all relevant times, lived and worked in Los Angeles County.  (FAC ¶ 13.)  Plaintiff worked as an Installation Technician (individually, "IT," and collectively, "ITs") for Defendant MCI from 2010 to early 2015.  (*Id.*)

Defendant MCI is a California corporation with its principal place of business in Los Angeles County, California.  (FAC ¶ 17.)  Defendant Mousa Golbahar owns and operates MCI, directing its operations from its principal place of business.  (*Id.*)  MCI's business is installing video, voice, and data cables for telecommunications systems throughout California.  (*Id.*)

Defendant Time Warner Cable Pacific West LLC is a Delaware Corporation which conducts substantial and regular business in California.  (FAC ¶ 20.)  Defendant Time Warner Cable Inc. is a Delaware Corporation which conducts substantial and regular business in California.  (*Id.* ¶ 19.)

#### 2.   Technical Support Services

Plaintiff alleges that TWC Inc. had a business arrangement with Multi Cable, Inc. ("MCI") and other companies pursuant to which MCI and such other companies would supply ITs to service TWC Inc.'s customers.  (FAC ¶¶ 4, 21.)  Plaintiff contends that

---

[1] Plaintiff brings this action on his own behalf and on behalf of all similarly situated technicians.  (*Id.* ¶ 7.)  Plaintiff is represented in this matter by (1) Blecher, Collins & Pepperman, (2) Harris & Ruble, and (3) Forouzan Law (collectively, "Plaintiff's Counsel" or "Counsel").

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 15-05592 BRO (FFM) | Date | January 3, 2017 |
|----------|----------------------|------|-----------------|
| Title | L. LUVIANO V. MULTI CABLE, INC. ET AL | | |

pursuant to this business arrangement, TWC Inc. effectively became a co-employer of the technicians working for the companies with which TWC Defendants contract. (*Id.* ¶ 5.) Plaintiff further avers that the technicians should have been classified and compensated as employees of TWC and the Contractors. (*See id.* ¶ 7.)

Plaintiff alleges that Defendant MCI[2] and TWC Defendants engaged him and hundreds of other ITs, as independent contractors. (*Id.*) Plaintiff and other ITs primarily perform manual labor associated with the installation of cable and telephone services at locations specified by TWC Defendants for MCI or other TWC Contractors. (FAC ¶ 21.) These services include driving to the installation site, installing cable wiring, connecting the wiring to equipment such as modems, televisions, and computers, and troubleshooting and repairing the customer wiring. (*Id.*) Plaintiff contends that MCI and TWC Defendants controlled virtually every facet of the ITs' jobs, including the uniforms they wear, the decals on their vehicles, materials they use, and the jobs they perform, including the hours during which those jobs are to be completed and the location at which the services will be provided. (*Id.*) Plaintiff asserts that ITs typically work more than 40 hours per week and more than eight hours per day; sometimes they work seven days per week at the direction of TWC Defendants and MCI. (*Id.* ¶ 23.)

In performing their job duties, ITs were required to purchase and maintain necessary safety equipment and tools; they were not reimbursed by TWC Defendants or MCI for these expenses. (FAC ¶ 33.) Moreover, ITs allegedly had to drive their own vehicles, at their own expense, 50 miles or more per day to and from work sites. (FAC ¶ 34.) In administering these services, Plaintiff and other ITs were not members of any union, nor was their work governed by any collective bargaining agreement. (*Id.* ¶ 53.)

### 3. Compensation

In view of the above, Plaintiff argues that TWC Defendants and MCI improperly compensated Plaintiff and other ITs as independent contractors, when these workers should have been classified and compensated as employees. (FAC ¶¶ 4, 7.) Plaintiff

---

[2] Plaintiff also named Mousa Golbahar, owner of MCI, as a defendant in this action. (FAC ¶ 8.) Golbahar and MCI will be referred to collectively as the "MCI Defendants." MCI Defendants and TWC Defendants will be referred to collectively as the "Defendants."

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 15-05592 BRO (FFM) | Date | January 3, 2017 |
|----------|------------------------|------|-----------------|
| Title | L. LUVIANO V. MULTI CABLE, INC. ET AL | | |

alleges that instead, MCI paid compensation to ITs based solely on the number of each type of service performed by ITs at customers' premises, and did not keep time records or pay overtime. (*Id.* ¶ 24.) According to Plaintiff, TWC Defendants and MCI failed to pay overtime to Plaintiff for hours worked in excess of eight per day. (*Id.* ¶ 39.)

Further, according to Plaintiff, in addition to improperly classifying Plaintiff as an independent contractor, TWC Inc. and MCI used a complex method of determining compensation that effectively lowered the compensation of the best workers. (FAC ¶¶ 25, 27, 28.) Plaintiff claims that the MCI and TWC Defendants operated a billing scheme according to which Plaintiff and other ITs used billing slips to indicate what types of equipment or service they had provided to customers. (*Id.* ¶ 26.) Each service or piece of equipment was designated by a particular service code. (*Id.*) Plaintiff alleges that he and other ITs were unable to discern how much they would be paid for each day of work because these billing slips established only the initial step in setting their wages. (*Id.* ¶ 27.) An additional step in setting the wages was based upon customer ratings of the ITs. (*Id.*) According to this rating system, which was conducted using an automated telephone system, a rating of 0 to 7 was considered a fail, a rating of 8 or 9 considered a pass. (*Id.* ¶ 28.) However, Plaintiff avers that a rating of 10 was also categorized as a failing grade because the automated phone system was unable to register a two-digit rating and thus would categorize a 10-rating as either a 1 or a 0. (*Id.*) Because of this system error, Plaintiff claims that the ITs who did the best work would receive the lowest pay. (*Id.*)

Plaintiff maintains that the billing slips and ratings used to determine ITs pay was complicated and prevented Plaintiff and other ITs from being able to accurately determine the amount of wages due to them in a given pay period. (FAC ¶ 30.) Plaintiff and other ITs who requested itemized billing from TWC Defendants and MCI were allegedly often rebuked. (*Id.*) Plaintiff also alleges that TWC Defendants and MCI arbitrarily downgraded and depressed ITs' wages. (*Id.* ¶¶ 30–31.)

In light of the foregoing, Plaintiff urges that multiple Class and Subclass actions against TWC Defendants and MCI Defendants are appropriate. According to Plaintiff, the following subclasses arise from TWC Defendants' and MCI Defendants' conduct: (1) a rest-period subclass encompassing non-exempt individuals who worked more than three-and-a-half hours during any given shift; (2) an off-the-clock subclass encompassing

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

LINK:

**CIVIL MINUTES – GENERAL**

| Case No. | CV 15-05592 BRO (FFM) | Date | January 3, 2017 |
|----------|----------------------|------|-----------------|
| Title | L. LUVIANO V. MULTI CABLE, INC. ET AL | | |

non-exempt ITs employed in California and made to work without compensation; (3) a reimbursement subclass, comprised of employees who did not receive reimbursement for necessary expenditures; (4) a miscalculation subclass of non-exempt ITs employed in California, and who worked overtime; (5) a wage statement subclass, with those non-exempt individuals employed by TWC Defendants and MCI in California, (FAC ¶ 62); and, (6) a federal overtime collective action class, encompassing ITs employed as associates who worked more than forty hours during a pay period, (*Id.* ¶ 63).[3]

## B.    Procedural History

Plaintiff filed the original class action complaint in the Superior Court of the State of California for the County of Los Angeles, Central District ("Los Angeles Superior Court") alleging the following claims individually, and on behalf of all others similarly situated: (1) failure to pay overtime; (2) failure to pay minimum wage; (3) failure to provide meal periods; (4) failure to provide rest periods; (5) failure to provide itemized wage statements; (6) waiting time penalties; (7) failure to provide indemnification for business expenses; (8) improper deductions from wages; (9) failure to pay overtime and liquidated damages under the Fair Labor Standards Act ("FLSA"); (10) misclassification of employees as independent contractors; (11) unfair competition; (12) Private Attorneys General Act ("PAGA"); and, (13) fraud.[4]  (*See* Dkt. No. 1-1, Ex. A ("Compl.") at 1.)

MCI Defendants removed the action to this Court on July 23, 2015.  (Dkt. No. 1 ("Removal").)  On November 5, 2015 Defendant TWC Inc.  moved to compel arbitration. (Dkt. No. 29.)  TWC Inc. later withdrew this motion.  (Dkt. No. 42.)  Plaintiff filed the operative First Amended Complaint on December 18, 2015, alleging the same thirteen causes of action as in the original Complaint, but joining additional defendants.[5]  (*See generally* FAC.)  The TWC Defendants and MCI Defendants answered the FAC on

---

[3] Plaintiff ultimately proposed a different class and subclass for certification.  (*See* Class Action Motion at iii.)

[4] In the original complaint, Plaintiff named only defendants TWC Inc., Multi-Cable, Inc. ("MCI"), and Mousa Golbahar ("Golbahar").  (*See* Compl. at 2–3.)

[5] Plaintiff joined Defendants Time Warner Cable Pacific West LLC and Time Warner Cable Enterprises LLC to the action.

| Case No. | CV 15-05592 BRO (FFM) | | Date | January 3, 2017 |
|----------|----------------------|---|------|-----------------|
| Title | **L. LUVIANO V. MULTI CABLE, INC. ET AL** | | | |

January 8, 2016 and January 15, 2016, respectively. (*See* Dkt. Nos. 55, 58.) On January 21, 2016, Plaintiff filed a Notice of Pendency of Other Action, advising the Court of the pendency[6] of *Salvador Ruacho v. Multi Cable Inc.*, Los Angeles Superior Court Case No. BC602993 ("*Ruacho*"), which was filed on December 7, 2015.[7] (*See* Dkt. No. 59.)

On August 19, 2016, Plaintiff filed the instant Motion for Certification of a Class Action, (Dkt. No. 78 ("Class Action Motion")), and Motion for Order Granting Certification of a Collective Action, (Dkt. No. 77 ("Collective Action Motion")). Also on August 19, 2016, Plaintiff filed a request for judicial notice. (Dkt. No. 79 ("RJN").) On October 19, 2016, MCI Defendants opposed the Class Action Motion, (Dkt. No. 113 ("MCI Class Opp'n")), and the Collective Action Motion, (Dkt. No. 111 ("MCI Collective Opp'n")). On October 19, 2016, TWC Defendants opposed the Class Action Motion, (*see* Dkt. No. 106 ("TWC Class Opp'n")), and the Collective Action Motion, (*see* Dkt. No. 105 ("TWC Collective Opp'n")).[8] TWC Defendants also filed a Motion to Strike the Declaration of Evelyn Carlson on October 19, 2016, (MTS), which Plaintiff opposed on October 31, 2016, (Dkt. No. 118).

On November 7, 2016, Plaintiff replied in support of his Class Action Motion. (Dkt. No. 127 ("Class Action Reply").) Also on November 7, 2016, Plaintiff replied in support of his Collective Action Motion.[9] (Dkt. No. 125 ("Collective Action Reply").)

---

[6] On September 30, 2016, Reynaldo Galvez filed his action, *Reynaldo Galvez v. Multi Cable, Inc., et al.*, Case No. BC635968, as an individual and on behalf of all others similarly situated, against Defendant Multi Cable, Inc., alleging a violation of California Labor Code §§ 226(a) and (e). (*See Galvez* Compl. at 1.)

[7] Ruacho sued the following defendants: Multi Cable, Inc., Mousa Golbahar, Time Warner Cable Inc., Time Warner Cable Pacific West LLC, Time Warner Cable Enterprises LLC. (*See* Dkt. No. 59 at 3.) Plaintiff Ruacho asserts one claim under PAGA, as an individual and representative law enforcement action.

[8] TWC Defendants filed a Motion to Disqualify Counsel on October 19, 2016, (Dkt. No. 107), which the Court denied on November 14, 2016, (*see* Dkt. No. 133).

[9] On November 14, 2016, TWC Defendants filed an Emergency Application to strike portions of Plaintiff's replies. (Dkt. No. 131.) Also on November 14, 2016, Plaintiff opposed the Emergency

| Case No. | CV 15-05592 BRO (FFM) | | Date | January 3, 2017 |
|----------|----------------------|--|------|-----------------|
| Title | L. LUVIANO V. MULTI CABLE, INC. ET AL | | | |

In his Class Action Motion, Plaintiff specifies one class and one subclass for which he seeks certification:

- **Class 1:** All ITs paid as faux "independent contractors" during the period from four years prior to the filing of the original Complaint herein (June 23, 2011) until June 13, 2015, the last date on which the ITs were paid as independent contractors rather than employees.

(Class Action Motion at iii.)

- **Subclass 1:** All ITs who are no longer working as such.

(*Id.*)

## II.    JUDICIAL NOTICE

Plaintiff requests judicial notice of state court records, state governmental agency websites, and FLSA consent forms. (*See generally* RJN.) The Court will discuss each request in turn. In considering matters presented by the parties, a court may properly take judicial notice of (1) material which is included as part of the complaint or relied upon by the complaint, and (2) matters in the public record. *See Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006); *Lee v. City of Los Angeles*, 250 F.3d 668, 688–89 (9th Cir. 2001). Under Federal Rule of Evidence 201(b), a judicially noticed fact must be one "not subject to reasonable dispute in that it (1) is generally known within the territorial jurisdiction of the trial court; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Further, a court "must take judicial notice if a party requests it and the court is supplied with the necessary information." *See* Fed. R. Evid. 201(c)(2); *In re Icenhower*, 755 F.3d 1130, 1142 (9th Cir. 2014). However, a court may not take judicial notice of a fact that is 'subject to reasonable dispute.'" *Lee*, 250 F.3d 668 (quoting Fed. R. Evid. 201(b)).

---

Application. (Dkt. No. 134.) The Court granted in part TWC Defendants' Emergency Application on November 15, 2016. (Dkt. No. 135.)

---

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 15-05592 BRO (FFM) | | Date | January 3, 2017 |
|----------|------------------------|---|------|-----------------|
| Title | L. LUVIANO V. MULTI CABLE, INC. ET AL | | | |

### A.  Publicly-Filed Court Documents

First, Plaintiff requests judicial notice of court documents from the public court file in *Mawyin v. Multi Cable, Inc.*, Los Angeles Superior Court (BC486526).  (*See* RJN.) These documents include the following: (1) The July 18, 2012, First Amended Complaint, a true and correct copy of which is attached to the RJN as Exhibit 1; (2) The October 10, 2012, Multi Cable, Inc. Answer to the First Amended Complaint, a true and correct copy of which is attached to the RJN as Exhibit 2; (3) The August 6, 2013 Motion for Preliminary Approval of Class Action Settlement, a true and correct copy of which is attached to the RJN as Exhibit 3; (4) The August 6, 2013, Declaration of Michael B. Mellema in Support of Motion for Preliminary Approval of Class Action Settlement (with the attached class action settlement agreement), a true and correct copy of which is attached to the RJN as Exhibit 4; (5) The August 4, 2013 Declaration of Daniel Mawyin in Support of Motion for  Preliminary Approval of Class Action Settlement, a true and correct copy of which is attached to the RJN as Exhibit 5; (6) The October 4, 2013 Supplemental Brief in Support of Preliminary Approval of Class Action Settlement, a true and correct copy of which is attached to the RJN as Exhibit 6; (7) The October 29, 2019, Order On Motion For Preliminary Approval Of Class Action Settlement, a true and correct copy of which is attached to the RJN as Exhibit 7; (8) The February 18, 2014, Declaration of Jacqueline Hitomi with Respect to Notification and Claims Administration, a true and correct copy of which is attached to the RJN as Exhibit 8; (9) The February 18, 2014, Motion for Final Approval of Class Action Settlement, a true and correct copy of which is attached to the RJN as Exhibit 9; (10) The March 27, 2014, Notice of Entry of Minute Order re Final Approval, a true and correct copy of which is attached to the RJN as Exhibit 10; (11) The April 7, 2014, Order and Judgment Granting Final Approval of Class Action Settlement, a true and correct copy of which is attached to the RJN as Exhibit 11; and, (12) The October 1, 2014 Final Accounting Report, a true and correct copy of which is attached to the RJN as Exhibit 12.  (*See* RJN at 1–2.)

Defendants have not opposed the request.  The court documents at issue are the matters in the public record.  Thus, these documents are proper subjects for judicial notice.  Accordingly, the Court **GRANTS** Plaintiff's Request for Judicial Notice of these public records.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 15-05592 BRO (FFM) | Date | January 3, 2017 |
|---|---|---|---|
| Title | L. LUVIANO V. MULTI CABLE, INC. ET AL | | |

### B.    State Governmental Agency Websites

Second, Plaintiff requests judicial notice of the following state governmental agency webpages: (1) The California Department of Industrial Relations webpage containing their FAQ on the topic of Independent Contractors versus Employees, last accessed on August 17, 2016, a true and correct copy of which is attached to the RJN as Exhibit 13; (2) The California Contractors State License Board webpage for C-7 – Low Voltage Systems Contractors, last accessed on August 18, 2016, a true and correct copy of which is attached to the RJN as Exhibit 14; and, (3) The California Contractors State License Board's Personnel License List for Mousa Golbahar, last accessed on August 18, 2016, a true and correct copy of which is attached to the RJN as Exhibit 15.  (RJN at 3.)

When a court takes judicial notice of publications like websites and newspaper articles, the court merely notices what was in the public realm at the time, not whether the contents of those articles were in fact true.  *Heliotrope Gen. Inc. v. Ford Motor Co.*, 189 F.3d 971, 981 n.118 (9th Cir. 1999).  "It is not uncommon for courts to take judicial notice of factual information found on the world wide web."  *O'Toole v. Northrop Grumman Corp.*, 499 F.3d 1218, 1225 (10th Cir. 2007).  This is particularly true of information on government agency websites, which have often been treated as proper subjects for judicial notice.  *See, e.g., Kitty Hawk Aircargo, Inc. v. Chao*, 418 F.3d 453, 457 (5th Cir. 2005) (taking judicial notice of approval by the National Mediation Board published on the agency's website); *Coleman v. Dretke*, 409 F.3d 665, 667 (5th Cir. 2005) (per curiam) (taking judicial notice of Texas agency's website); *Denius v. Dunlap*, 330 F.3d 919, 926–27 (7th Cir. 2003) (taking judicial notice of information on official government website); *In re Wellbutrin SR/Zyban Antitrust Litig.*, 281 F. Supp. 2d 751, 754 n.2 (E.D. Pa. 2003) (taking judicial notice of the Food and Drug Administration's list of new and approved drugs); *United States ex rel. Dingle v. BioPort Corp.*, 270 F. Supp. 2d 968, 972 (W.D. Mich. 2003) (citation omitted) ("Public records and government documents are generally considered not to be subject to reasonable dispute . . . . This includes public records and government documents available from reliable sources on the Internet."); *Cali v. E. Coast Aviation Servs., Ltd.*, 178 F. Supp. 2d 276, 287 n.6 (E.D.N.Y. 2001) (taking judicial notice of documents from Pennsylvania state agencies and Federal Aviation Administration).  One concern that cautions against taking judicial notice of websites, "as the Seventh Circuit recognized, [is that] the internet contains an unlimited supply of information with varying degrees of reliability, permanence, and

| Case No. | **CV 15-05592 BRO (FFM)** | Date | January 3, 2017 |
|----------|---------------------------|------|-----------------|
| Title | **L. LUVIANO V. MULTI CABLE, INC. ET AL** | | |

accessibility."[10]  *United States v. Kane*, No. 2:13-CR-250-JAD-VCF, 2013 WL 5797619, at *9 (D. Nev. Oct. 28, 2013) (citing *Pickett v. Sheridan Health Care Center*, 664 F.3d 632, 648 (7th Cir. 2011)).

While judicial notice of government websites is not uncommon, even government websites may have "varying degrees of . . . permanence, and accessibility," *see Kane*, 2013 WL 5797619, at *9, based on changes to the underlying database; thus, this Court **GRANTS** Plaintiff's request for judicial notice of these governmental agency websites only as to their existence on the date each of the sites was last accessed.

### C.    FLSA Consent Forms

Finally, Plaintiff respectfully requests that the Court take judicial notice of the FLSA consent forms of Harris & Ruble clients Luis Luviano, Salvador Ruacho, Edgar Cervantes, Edson Solis, Eric Medrano, Wilson Rodrigues, Efrain Perez, Hayk Vardanyan, Mario Sandres, Tigran Petrosian, Jose Chavez, Reynaldo Galvez, Dario Ramos (aka Henry Sastume), and Orlin Martinez.  Plaintiff asserts that true and correct copies of the FLSA consents are attached to the RJN as Exhibit 16.  (*See id.*)

Defendants have not opposed the request.  The documents at issue are relied upon by for the purpose of showing the proposed FLSA class members' compliance with FLSA's requirement of affirmative, opt-in, consent to join the action.  (FAC ¶ 63.)  The contents of these documents are not generally known within the territorial jurisdiction of this Court; and although Defendants do not oppose the request, the Court does not find the FLSA Consent forms to emanate from sources whose accuracy cannot reasonably be questioned.  For this reason, the Court will not judicially notice the content of the forms. But because the First Amended Complaint relies upon and incorporates the documents by reference, the Court **GRANTS** Plaintiff's request for judicial notice merely as to the existence of the forms.

---

[10] Before taking judicial notice of facts contained in websites, the Third and Seventh Circuits advise authenticating printouts of the webpage under Rule 901, supporting the printouts with affidavits, or holding a hearing on the facts to be noticed in order to give the opposing party an opportunity to respond.  *Kane*, 2013 WL 5797619, at *9; *Pickett*, 664 F.3d at 648.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 15-05592 BRO (FFM) | Date | January 3, 2017 |
|---|---|---|---|
| Title | L. LUVIANO V. MULTI CABLE, INC. ET AL | | |

## III. EVIDENTIARY OBJECTIONS

The parties have filed multiple, contentious evidentiary objections. The Court first addresses the appropriate evidentiary standard applied to class certification and conditional certification motions. To the extent that the parties' objections are based on discovery-related allegations, the Court discusses them in the substantive analysis of the Motions.

### A. Certification of Class Action Certification Standard

The Court may "consider inadmissible evidence in deciding whether it is appropriate to certify a class." *In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 965 n.147 (C.D. Cal. 2015) ("Since a motion for class certification is a preliminary procedure, courts do not require strict adherence to the Federal Rules of Civil Procedure or the Federal Rules of Evidence . . . . At the class certification stage, the court makes no findings of fact and announces no ultimate conclusions on Plaintiffs' claims." (internal quotations omitted)); *accord Waine-Golston v. Time Warner Entm't-Advance/New House P'ship*, No. 11-CV-1057–GPB(RBB), 2012 WL 6591610, at *9 (S.D. Cal. Dec. 18, 2012) ("Since a motion to certify a class is a preliminary procedure, courts do not require strict adherence to the Federal Rules of Civil Procedure or the Federal Rules of Evidence." (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974) (explaining that the class certification procedure "is not accompanied by the traditional rules and procedures applicable to civil trials"))); *Keilholtz v. Lennox Hearth Prods., Inc.*, 268 F.R.D. 330, 337 n.3 (N.D. Cal. 2010) ("On a motion for class certification, the Court may consider evidence that may not be admissible at trial."). District courts may, however, "resolve any factual disputes necessary to determine whether" a plaintiff's claims meet the Rule 23 criteria. *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 983 (9th Cir. 2011) (noting a factual dispute regarding commonality and holding that the court is "required to resolve any factual disputes necessary to determine whether there was a common pattern and practice that could affect the class as a whole").

### B. Conditional Certification of Collective Action Standard

Some courts have held that only admissible evidence can be considered at the notice stage of the collective action proceedings. *See, e.g., Colson v. Avnet, Inc.*, 687 F.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 15-05592 BRO (FFM) | Date | January 3, 2017 |
|---|---|---|---|
| Title | L. LUVIANO V. MULTI CABLE, INC. ET AL | | |

Supp. 2d 914, 928 (D.Ariz.2010) (citing *Harrison v. McDonald's Corp.*, 411 F. Supp. 2d 862, 865–66 (S.D. Ohio 2005)). However, a majority of courts have determined that evidentiary rules should be relaxed at this stage. *See, e.g.*, *Syed v. M–I, L.L.C.*, No. 1:12-CV-1718 AWI MJS, 2014 WL 6685966, at *6 (E.D. Cal. Nov. 26, 2014) (evidentiary rules are not strictly applied); *Davis v. Social Serv. Coords., Inc.*, 2012 WL 3744657 at *7 (E.D. Cal. Aug. 28, 2012) ("many courts have relaxed the evidentiary requirements for plaintiffs at the conditional certification stage because the evidence has not been fully developed through discovery and the evidence will be subjected to greater scrutiny at the second stage"); *Dominguez v. Schwarzenegger*, 270 F.R.D. 477, 483 n.5 (N.D. Cal. 2010) ("unlike evidence presented at a summary judgment stage, evidence presented in support of class certification need not be admissible at trial"). Among other things, "the limitation on hearsay is relaxed." *Syed*, 2014 WL 6685966 at *7.

In light of the applicable, lenient evidentiary standard in class certification and conditional certification of collective actions, the Court **OVERRULES** the parties' objections for the limited purpose of the consideration of the certification of a class action and conditional certification of the collective action.[11]

## IV.   LEGAL STANDARD

### A.   Motion to Strike Expert Declaration

Rule 702 of the Federal Rules of Evidence governs admissibility of expert testimony in federal courts. It provides,

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or determine a fact in issue;

---

[11] Where such ruling impacts the Court's substantive findings, the Court provides additional reasoning in the Discussion section of this order.

| Case No. | CV 15-05592 BRO (FFM) | Date | January 3, 2017 |
|----------|------------------------|------|-----------------|
| Title | L. LUVIANO V. MULTI CABLE, INC. ET AL | | |

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702 (West 2011).  The key inquiry in evaluating expert testimony centers on reliability.  *See Daubert v. Merrell Dow Pharm. Inc.*, 509 U.S. 579, 590 (1993).  As the Ninth Circuit recently reiterated, "[w]e are concerned not with the correctness of the expert's conclusions but the soundness of his methodology." *Estate of Barabin v. AstenJohnson Inc.*, 740 F.3d 457, 463 (9th Cir. 2014) (internal quotation marks and alterations omitted).  Thus, it is incumbent upon a district court to "act as a gatekeeper to exclude junk science that does not meet Federal Rule of Evidence 702's reliability standards." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 982 (9th Cir. 2011) (internal quotation marks omitted).  These same standards apply to all expert testimony, not just scientific testimony. *Kumho Tire Company, Ltd. v. Carmichael*, 526 U.S. 137 (1999).

Importantly, the Rule 702 inquiry is flexible, and courts may exercise significant discretion. *Daubert*, 509 U.S. at 594; *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1044 (9th Cir. 2014).  Finally, a proponent of expert testimony has the burden of proving that the proposed expert testimony is admissible under Rule 702, *Daubert* and its progeny. *Lust ex rel. Lust v. Merrell Dow Pharm., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996).

## B.    Motion for Class Certification

A Rule 23 class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Califano v. Yamasaki*, 442 U.S. 682, 700–01 (1979).  Certification is the process by which a named party may begin representing a class of individuals who are not named and do not otherwise participate in the litigation.  Pursuant to Rule 23, a class may be certified only if four requirements are satisfied: (1) the class is so numerous that joinder would be impracticable—numerosity; (2) there are questions of law or fact that are common to the class as a whole—commonality; (3) the representative parties have claims or defenses typical of those of the class—typicality; and, (4) the representative parties will fairly and adequately protect the

| Case No. | CV 15-05592 BRO (FFM) | Date | January 3, 2017 |
|---|---|---|---|
| Title | L. LUVIANO V. MULTI CABLE, INC. ET AL | | |

class's interests—adequacy. Fed. R. Civ. P. 23(a). Additionally, a class may be certified only if one of Rule 23(b)'s requirements is met. *See* Fed. R. Civ. P. 23(b).

The party seeking class certification bears the burden of establishing the requirements of Rules 23(a) and 23(b). *See Wal-Mart Stores Inc. v. Dukes*, 564 U.S. 338, 350 (2011) ("A party seeking class certification must affirmatively demonstrate his compliance with [] Rule [23].") When ruling on a motion for certification, a court generally must accept as true the allegations in the complaint, especially when "the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982). Nevertheless, "sometimes it may be necessary for the court to probe behind the pleadings" when considering certification. *Id.* A court's analysis should be rigorous and may "entail some overlap with the merits of the plaintiff's underlying claim." *Wal-Mart*, 564 U.S. at 351.

## C. Motion for Certification of Collective Action

Congress enacted the FLSA in 1938 to establish nationwide minimum wage and maximum hours standards. *Moreau v. Klevenhagen,* 508 U.S. 22, 25 (1993). The FLSA requires employers to pay covered employees overtime compensation of one and one-half times the regular rate of pay for all hours worked in excess of forty hours per week, unless an exemption applies. 29 U.S.C. § 207(a)(1). To ensure compliance with this requirement, the FLSA authorizes actions by employees to recover unpaid overtime wages and an equal amount as liquidated damages for violation of the FLSA's overtime provisions. 29 U.S.C. § 216(b).

In addition to bringing individual suits, the FLSA allows employees to bring a collective action on behalf of other "similarly situated" employees based on alleged violations of the FLSA. 29 U.S.C. § 216(b). A "collective action" differs from a class action. *McElmurry v. U.S. Bank Nat'l Ass'n*, 495 F.3d 1136, 1139 (9th Cir. 2007). "In a class action, once the district court certifies a class under Rule 23, all class members are bound by the judgment unless they opt out of the suit. By contrast, in a collective action each plaintiff must opt into the suit by 'giv[ing] his consent in writing.'" *Id.* (citing 29 U.S.C. § 216(b)). As a result, "unlike a class action, only those plaintiffs who expressly join the collective action are bound by its results." *Id.* (citing 29 U.S.C. § 256). Section

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

LINK:

| Case No. | CV 15-05592 BRO (FFM) | Date | January 3, 2017 |
|---|---|---|---|
| Title | L. LUVIANO V. MULTI CABLE, INC. ET AL | | |

216(b) does not require district courts to approve or authorize notice to potential plaintiffs, but it is "within the discretion of a district court" to authorize such notice. *Hoffmann–La Roche Inc. v. Sperling,* 493 U.S. 165, 173 (1989). The plaintiff bears the burden to show that he and the proposed class members are "similarly situated." *See Adams v. Inter–Con Security Sys., Inc.,* 242 F.R.D. 530, 535 (N.D. Cal. Apr. 11, 2007) (citing 29 U.S.C. § 216(b)).

The FLSA does not define the term "similarly situated." Although the Ninth Circuit has not yet articulated the appropriate test for certifying an FLSA collective action, district courts in this Circuit generally apply a two-step approach. *See, e.g. Benedict v. Hewlett–Packard Co.,* No. 13–CV–00119–LHK, 2014 WL 587135 (N.D. Cal. Feb. 13, 2014); *Reed v. County of Orange,* 266 F.R.D. 446, 449 (C.D. Cal. 2010); *Edwards v. City of Long Beach,* 467 F. Supp. 2d 986, 990 (C.D. Cal. 2006); *Leuthold v. Destination Am., Inc.,* 224 F.R.D. 462, 466 (N.D. Cal. 2004). Under the first step, the court makes an initial "notice-stage" determination as to whether potential opt-in plaintiffs are similarly situated to the representative plaintiffs, deciding if a collective action should be certified for the sole purpose of sending notice of the action to potential class members. *Leuthold,* 224 F.R.D. at 467. This determination is "based primarily on the pleadings and any affidavits submitted by the parties." *Id.* The standard applied at this stage has been described as "fairly lenient," *id.,* requiring little more than substantial allegations, supported by declarations or discovery, that "the putative class members were together the victims of a single decision, policy, or plan." *Villa v. United Site Services of Ca.,* No. 5:12–CV–00318–LHK, 2012 WL 5503550, at *13 (N.D. Cal. Nov. 13, 2012) (citation omitted); *see also Morton v. Valley Farm Transport, Inc.,* No. C–06–2933–SI, 2007 WL 1113999, at *2 (N.D. Cal. Apr. 13, 2007) (describing burden as "not heavy" and requiring plaintiffs to merely show a "reasonable basis for their claim of class-wide" conduct) (internal quotation marks and citation omitted). The standard "typically results in conditional class certification." *Leuthold,* 224 F.R.D. at 467. Moreover, "[p]laintiffs need not conclusively establish that collective resolution is proper, because a defendant will be free to revisit this issue at the close of discovery." *Benedict,* 2014 WL 587135, at *5 (citing *Kress v. PricewaterhouseCoopers, LLP,* 263 F.R.D. 623, 640 (E.D. Cal. 2009)).

In the second stage, which is reached once discovery is complete and the case is ready to be tried, the party opposing class certification may move to decertify the class.

| Case No. | CV 15-05592 BRO (FFM) | Date | January 3, 2017 |
|----------|----------------------|------|-----------------|
| Title | L. LUVIANO V. MULTI CABLE, INC. ET AL | | |

*Reed,* 266 F.R.D. at 449.  The court then must make a factual determination regarding the propriety and scope of the class and must consider the following factors: (1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to the defendants with respect to the individual plaintiffs; and (3) fairness and procedural considerations.  *Pfohl v. Farmers Ins. Grp.,* 2004 WL 554834, *2–3 (C.D. Cal. Mar. 1, 2004) (citing *Thiessen v. General Electric Capital Corp.,* 267 F.3d 1095, 1103 (10th Cir. 2001)).  Should the court determine on the basis of the complete factual record that the plaintiffs are not similarly situated, then the court may decertify the class and dismiss the opt-in plaintiffs without prejudice.  *Leuthold,* 224 F.R.D. at 467.

## V.    DISCUSSION

In support of his Class Action and Collective Action Motions, Plaintiff proffers the Declaration of Evelyn Carlson.  (Dkt. No. 80 ("Carlson Decl.").)  Plaintiff relies on Carlson as an expert witness to testify to matters such as ascertainability, numerosity, and existence of common questions in relation to Plaintiff's Motions.  The Court will first discuss Defendants' motion to strike Carlson's Declaration.  The Court will then consider Plaintiff's Class Action and Collective Action Motions.

### A.    Defendants' Motion to Strike Evelyn Carlson's Declaration

Defendants contend that the Court should exclude Plaintiff's expert Evelyn Carlson's Declaration because "Carlson's testimony fails to meet the standards for admissibility of expert opinions set forth in Federal Rule of Evidence 702 and *Daubert*, 509 U.S. 579.  Specifically, TWC Defendants argue that the declaration should be stricken for three reasons: (1) Carlson is unqualified to "offer an expert opinion regarding whether class certification is appropriate (a pure legal issue)"; (2) Carlson improperly asserts "legal conclusions regarding issues that are the exclusive province of the Court"; and, (3) Carlson's "conclusions are unreliable because they are based on unsupported and false assumptions."  (MTS at 1.)  To ameliorate these alleged issues, Defendants request that "the Court . . . strike [Carlson's] declaration in full."  (MTS at 9.)

//

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 15-05592 BRO (FFM) | Date | January 3, 2017 |
|---|---|---|---|
| Title | L. LUVIANO V. MULTI CABLE, INC. ET AL | | |

### 1. Carlson is Not Qualified to Offer An Expert Opinion On Legal Issues

Federal Rule of Evidence 702 prescribes the requirements for testimony by expert witnesses. The rule "contemplates a broad conception of expert qualifications." *Thomas v. Newton Int'l Enters.*, 42 F.3d 1266, 1269 (9th Cir. 1994). It permits an expert to be qualified by "knowledge, skill, experience, training, or education." Fed. R. Evid. 702. "Moreover, the advisory committee notes emphasize that Rule 702 is broadly phrased and intended to embrace more than a narrow definition of qualified expert." *Thomas*, 42 F.3d at 1269.

Carlson details her qualifications in her Declaration. (*See* Dkt. No. 80 ("Carlson Decl.") at 1–2.) She holds an MBA in Finance from UCLA, worked in the business sector for a number of years as CFA and COO at Knapp Communications Corp., and considered merger and acquisitions issues during her experience at Freedom Communications, Inc. (Carlson Decl. at 1.) She claims to have "routinely examined payroll systems of target companies, along with evaluating their compliance with the requirements of the California Labor Code and the Fair Labor Standards Act." (*Id.*) Moreover, Carlson asserts that she has previously been qualified in Los Angeles Superior Court as an expert, and was charged with preparing an accounting of "damages to determine the damages due to each class member on account of the violations of the California Labor Code and the Fair Labor Standards Act." (Carlson Decl. at 2.)

Carlson lacks sufficient nexus between her educational and professional background and many of the determinations she offers. Her prior expert testimony in Los Angeles Superior Court was unrelated to the many of the certification issues encompassed by the testimony she attempts to offer here. Though Evelyn Carlson has impressive credentials, the Court finds that she is not qualified to proffer expert testimony on the legal issues in question here.

### 2. Carlson's Improper Legal Conclusions

In her Declaration, Carlson expresses opinions such as: (1) "[I]t is my opinion that the [ITs'] names and addresses are ascertainable."; (2) "[I]t is my opinion that the numbers of ITs involved in the proposed Class and Subclass are sufficiently numerous to

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

LINK:

| Case No. | CV 15-05592 BRO (FFM) | | Date | January 3, 2017 |
| Title | L. LUVIANO V. MULTI CABLE, INC. ET AL | | | |

warrant certification, without being so numerous as to make the case unmanageable.";
and, (3) there are many common questions which may be [answered by evidence
uniformly applicable to both Luviano and the other ITs . . . ." (Carlson Decl. at 5, 7, 8.)
Carlson explains that she reviewed a number of materials in advance of offering her
opinions. These materials include the Plaintiff Luviano's deposition transcript,
documents such as FLSA consents and Declarations in the case, the TWC Installation
Manual, and MCI documents issued when making biweekly piece work payments. (*See*
Carlson Decl. at 2–3.)

TWC Defendants argue that Carlson "has *no legal expertise* that could qualify her
to reach these conclusions. She is not a lawyer or a judge, has never received any formal
training in federal or California law, and has no background in the legal bases of class or
collective action law." (MTS at 1.) Plaintiff responds that "Carlson is fully qualified, by
education and experience, to testify regarding the payroll systems and human resources
issues at issue in this case." (Dkt. No. 118 ("MTS Opp'n") at 2.) Plaintiff also contends
that "[t]he Carlson Declaration passes *Daubert* scrutiny." (MTS Opp'n at 10.)

While the Court is mindful that Carlson has duly reviewed relevant materials in
advance of offering her opinions, the Court finds that many of Carlson's "opinions" are
actually legal conclusions, which expert witnesses may not proffer. *See United States v.
Tamman*, 782 F.3d 543, 552 (9th Cir. 2015) ("[A]n expert cannot testify to a matter of
law amounting to a legal conclusion."); *Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*,
523 F.3d 1051, 1058 (9th Cir. 2008) ("[A]n expert witness cannot give an opinion as to
her *legal conclusion,* i.e., an opinion on an ultimate issue of law." (emphasis in original)).
Even Carlson's self-expressed understanding of her "assignment" manifests her
transgression into the province of this Court. (*See* Carlson Decl. at 4 (stating, among
other things, that her assignment was to evaluate "[w]hether the number of ITs involved
in the proposed class is sufficiently numerous to warrant certification . . . ?").)
Accordingly, the Court **STRIKES** pages 1 through 13 of Carlson's Declaration.

### 3.    Carlson's Opinions Regarding Damages Calculation Are Permissible

As explained above, Carlson's credentials demonstrate expertise in financial
concepts and damages calculations in class actions under California law and the FLSA.

| Case No. | CV 15-05592 BRO (FFM) | Date | January 3, 2017 |
|----------|------------------------|------|-----------------|
| Title | L. LUVIANO V. MULTI CABLE, INC. ET AL | | |

And at the hearing on this matter, Plaintiff's counsel explained that the thrust of Carlson's opinion is that the computer records generated through the I&R can retrieved and used to determine how ITs spent their work-time, which will ultimately also inform a damages calculation. (*See* Hearing Tr. at 8:1–9; 9:15–17.) While Carlson improperly states legal conclusions (which must be stricken), the Court is mindful that Carlson's Declaration does not consist entirely of impermissible legal conclusions. Carlson also proposes particular mechanisms for calculating damages sustained by each proposed class member in class actions for violations of California law and the FLSA. (*See, e.g.*, Carlson Decl. at 16–17.) Carlson's opinions regarding damages calculation and the potential mechanics of extracting data from Defendants' record-keeping systems are both within her demonstrated expertise and do not constitute conclusions reserved for the Court. Therefore, the Court does not strike pages 14 through 19 of Carlson's Declaration. In light of the foregoing, the Court **GRANTS in part** TWC Defendants' Motion to Strike the Declaration of Evelyn Carlson.

### B.    Plaintiff's Motion for Class Certification

As described above, Plaintiff seeks to certify one Class and one Subclass. (Class Action Motion at iii.) A class may be certified only if the plaintiffs can satisfy the requirements of Rule 23(a) and 23(b). Fed. R. Civ. P. 23. TWC Defendants contend certification is improper for the following reasons: (1) Plaintiff has failed to establish that the issue of whether TWC Defendants and Defendant MCI are joint employers can be resolved by common proof, (Class Action Motion at 14); (2) Plaintiff has failed to establish that the issue of whether IT was misclassified as a "faux independent contractor" can be proven on a classwide basis, (Class Action Motion at 15–16); (3) a determination of liability involves highly individualized issues such that Plaintiff is unable to satisfy Rule 23(a)'s commonality requirement, (Class Action Motion at 16); (4) Neither Plaintiff, nor Plaintiff's Counsel, are adequate representatives for the putative class, (Class Action Motion at 18); and, (5) Any common questions of law and fact do not predominate, (Class Action Motion at 16).

### 1.    Class Definition - Ascertainability

TWC Defendants contend that Plaintiff's definition creates a fail-safe class, and thus is not "ascertainable" and cannot be certified. (*See* TWC Class Opp'n at 4.) Most

| Case No. | CV 15-05592 BRO (FFM) | | Date | January 3, 2017 |
|---|---|---|---|---|
| Title | L. LUVIANO V. MULTI CABLE, INC. ET AL | | | |

courts addressing ascertainability describe the concept as an additional or implied requirement outside of Rule 23. *See, e.g.*, *Doyle v. Chrysler Grp. LLC*, No. SACV 13–00620 JVS, 2014 WL 7690155, at *5 (C.D. Cal. Oct. 9, 2014) ("In addition to more precisely articulated provisions of Rule 23(a) and (b), there is the implied prerequisite that the class be sufficiently definite and ascertainable.") (citing *Xavier v. Philip Morris USA Inc.*, 787 F. Supp. 2d 1075, 1089–90 (N.D. Cal. 2011)); *McCrary v. Elations Co., LLC*, No. EDCV 13–00242 JGB OP, 2014 WL 1779243, at *3 (C.D. Cal. Jan. 13, 2014) ("Although not mentioned in Rule 23(a), the moving party must also demonstrate that the class is ascertainable.") (citing *Keegan v. Am. Honda Motor Co., Inc.*, 284 F.R.D. 504, 521 (C.D. Cal. 2012)).

"'Ascertainability is needed for properly enforcing the preclusive effect of [a] final judgment. The class definition must be clear in its applicability so that it will be clear later on whose rights are merged into the judgment, that is, who gets the benefit of any relief and who gets the burden of any loss . . . . Indeed, courts of appeal have found class certification to be inappropriate where ascertaining class membership would require unmanageable individualized inquiry.'" *Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*, No. 13-5693 PSG (RZX), 2015 WL 4776932, at *6 (C.D. Cal. May 27, 2015) (citations omitted).

TWC Defendants allege that Class 1 "is an impermissible failsafe class, as the determination of whether Plaintiff and the putative class were 'faux independent contractors' – i.e. improperly classified as such – is a determination on the merits." (TWC Class Opp'n at 4.) MCI Defendants echo TWC Defendants' objection that Class 1 "is a textbook example of a 'fail safe' class." (MCI Class Opp'n at 7.) MCI Defendants explain that "[o]nly after the class member proves that he or she was improperly misclassified as an independent contractor . . . does the employee meet the class definition." (MCI Class Opp'n at 9.)

Courts in this District counsel that "[a]n ascertainable class exists if it can be identified 'by reference to objective criteria.'" *Steven Ades & Hart Woolery v. Omni Hotels Mgmt. Corp.*, No. 2:13–CV–02468–CAS (MANx), 2014 WL 4627271, at *6 (C.D. Cal. Sept. 8, 2014) (quoting *Parkinson v. Hyundai Motor Am.*, 258 F.R.D. 580, 593 (C.D. Cal. 2008)). "In [the Ninth] Circuit, it is enough that the class definition describes 'a set of common characteristics sufficient to allow' a prospective plaintiff to 'identify

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

| Case No. | CV 15-05592 BRO (FFM) | Date | January 3, 2017 |
|----------|------------------------|------|-----------------|
| Title | L. LUVIANO V. MULTI CABLE, INC. ET AL | | |

himself or herself as having a right to recover based on the description.'" *See McCrary*, 2014 WL, at *8 (quoting *Moreno v. AutoZone, Inc.*, 251 F.R.D. 417, 421 (N.D. Cal. 2008) (citation and internal quotations omitted)).

Plaintiff responds that "if that were the test, no independent contractor misclassification case could be certified." (Class Action Reply at 6 (citing *Carter v. XPO Last Mile, Inc.*, 2016 WL 5680464, at *5 (N.D. Cal. Oct. 3, 2016)).) But in this Court's view, the Defendants raise valid, serious defects in the Class's definition. In *Carter*, the court explained that "Plaintiffs seek conditional certification under the Fair Labor Standards Act (FLSA) of a class of Delivery Drivers who signed Delivery Service Agreements with defendant XPO Last Mile, Inc." *Carter*, 2016 WL 5680464, at *1. The class in *Carter* could be determined by objective criteria; potential class members included: (1) delivery drivers who had (2) signed "Delivery Service Agreements" (3) with defendant. *See id.*

But here, the addition of the adjective "faux" and the phrase "were paid as independent contractors rather than employees," (Class Action Motion at iii), to the class definition incorporates a quasi-legal conclusion into the proposed Class definition. Potential class members (and this Court) cannot readily reference objective criteria in order to determine who falls under the proposed Class definition; rather the definitions suggest criteria that necessitate a legal conclusion of improper classification. The proposed Class definition subsumes the instant proceeding itself because it contemplates that only ITs who were *improperly* paid as independent contractors may be members of the class. Such impropriety is the key subject of legal dispute in this action.

The proposed Class definition and abbreviated phrasing of the Subclass definition here give the Court substantial concern about the ascertainability of Plaintiff's proposed classes. Such concerns weigh against certification of the proposed Class and Subclass. To redress this concern, the Court exercises its discretion to modify the proposed Class definition.[12] The Court designates the following Class definition for purposes of certification:

---

[12] District courts have broad discretion to modify class definitions. *Williams v. City of Antioch*, No. C 08-02301 SBA, 2010 WL 3632197, at *7 (N.D. Cal. Sept. 2, 2010) (citing *Powers v. Hamilton Cty. Pub. Def. Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007)); *see also Schorsch v. Hewlett–Packard Co.*, 417 F.3d

| Case No. | CV 15-05592 BRO (FFM) | Date | January 3, 2017 |
|---|---|---|---|
| Title | L. LUVIANO V. MULTI CABLE, INC. ET AL | | |

- **Class**: Includes all persons who (1) entered into a "Contract for Cabling Project Services" with Multi Cable, Inc., and, (2) performed cable installation, repair, disconnect and/or similar services in the state of California on behalf of Multi Cable, Inc., Time Warner Cable Inc., Time Warner Cable Pacific West LLC, and/or Time Warner Cable Enterprises LLC between June 23, 2011 and June 13, 2015.

## 2. Rule 23(a)

### a. Numerosity

This requirement is met if the class is so large that joinder of all members is impracticable. Fed. R. Civ. P. 23(a). The Court is mindful that Plaintiff is not required "to state the exact number and identity of every class member because to do so would frustrate the purpose of class actions when recoveries may be numerous but small." *In re U.S. Fin. Sec. Litig.*, 69 F.R.D. 24, 34 (S.D. Cal. 1975) (citing *Herbst v. Able*, 278 F. Supp. 664 (S.D.N.Y. 1967)). "Where the exact size of the class is unknown but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied." *Orantes–Hernandez v. Smith*, 541 F. Supp. 351, 370 (C.D. Cal. 1982).

Plaintiff is correct in stating that "[t]he exact size of the class need not be known so long as 'general knowledge and common sense indicate that it is large.'" (Class Action Motion at 14.) Here, Plaintiff merely suggests that "most district courts require in excess of 40 class members to satisfy the numerosity requirement." (*See* Class Action Motion at 13 (citing *Rannis v. Recchia*, No. 09-55859, 2010 WL 2124096, at *4 (9th Cir. May 27, 2010)).) Plaintiff references Carlson's Declaration in order to attempt to establish that a *mechanism* for determining class members' identity may exist. (Class Action Motion at 13.) But, as explained above, Carlson's Declaration is stricken. And even if her declaration were not stricken, an allegation that a mechanism exists by which to

748, 750 (7th Cir. 2005) (noting that "[l]itigants and judges regularly modify class definitions"); *In re Monumental Life Ins. Co.,* 365 F.3d 408, 414 (5th Cir. 2004) ("District courts are permitted to limit or modify class definitions to provide the necessary precision.").

| Case No. | CV 15-05592 BRO (FFM) | Date | January 3, 2017 |
|---|---|---|---|
| Title | L. LUVIANO V. MULTI CABLE, INC. ET AL | | |

determine the identity of class members does not equate to any allegation of the numerosity of the class supported by at least some evidence.[13]

Here, Plaintiff's evidence sufficiently establishes that the numerosity requirement is met, if the class definition were accurately phrased to encompass all ITs who worked for MCI or TWC Defendants. In the operative First Amended Complaint, Plaintiff alleges that the "[previously proposed class and subclasses] are believed to number in excess of 100 but fewer than 4, 000 [sic] persons." Harris's Declaration reflects that "[a]t the time of [Luviano's] January 14, 2016 deposition, some 137 persons worked for the company, *most* as ITs." (Dkt. No. 81, Harris Decl. at 28 (citing Harris Decl., Ex. 238 (emphasis added).) A majority of 137 persons implies no fewer than 69 persons, which exceeds the tentative minimum number of class members needed to satisfy the numerosity requirement. *See Rannis*, 2010 WL 2124096, at *4.

But the putative Class is defined to encompass only ITs who worked for Defendants between June 23, 2011, and June 13, 2015. (*See* Class Action Motion at iii.) Plaintiff fails to offer any evidence or even argument to show that the number of employees, and in particular ITs, on January 14, 2016, is representative of the number of employees during the class period. And Harris's assertion that according to Solis's Declaration, "the proposed Class consists of over 100 individuals" (*see* Harris Decl. ¶ 19 (citing Dkt. No. 82, Solis's Decl. ¶ 9)), is not directly supported by Solis's Declaration.[14]

---

[13] The Court notes that Plaintiff has made an inexplicably convoluted showing with regard to numerosity. On the face of the Class Action Motion, Plaintiff fails to make so much as an estimate supported by general knowledge or common sense, to give at least some indication as to the size of the proposed class here. Nor does Plaintiff refer to any evidence submitted that might assist the Court in determining whether the numerosity requirement is met. The closest Plaintiff comes to alleging any fact or concept in the Class Action Motion that would support the numerosity of the class is the allegation that "TWC is among the largest providers of video, high-speed data and voice services in the U.S." (*See* Class Action Motion at 2 n.6.)

[14] In paragraph 9 of his Declaration, Solis merely states that: "in the previous *Mawyin* lawsuit in 2013, there were roughly 370 current employees, and 80 former employees. The size of MCI and its territory has grown substantially since the *Mawyin* lawsuit, but in any case, the number of current and former employees who have worked with MCI over the past five years is less than 1000." (Solis's Decl. ¶ 19.)

| Case No. | CV 15-05592 BRO (FFM) | | Date | January 3, 2017 |
|----------|------------------------|--|------|-----------------|
| Title | L. LUVIANO V. MULTI CABLE, INC. ET AL | | | |

Mindful of these factors, the Court still finds that general knowledge and common sense dictates that the character of Defendants' workforce is unlikely to have changed dramatically in number between June 13, 2015, and January 14, 2016. Thus, the designated Class likely includes more than fifty persons. The Ninth Circuit has explained that the numerosity requirement is not tied to a fixed number. *Rannis v. Recchia*, 380 F. App'x 646, 651 (9th Cir. 2010). But generally, this Circuit agrees that the numerosity requirement may be satisfied when the class numbers at least forty members. *See id.* Thus, the Court finds that, through common sense, the proposed Class here satisfies the numerosity requirement.

#### b.    Commonality

The commonality requirement is met if there are "questions of law and fact common to the class." Fed. R. Civ. P. 23(a). "Where the circumstances of each particular class member vary but retain a common core of factual or legal issues with the rest of the class, commonality exists." *Parra v. Bashas', Inc.*, 536 F.3d 975, 978–79 (9th Cir. 2008); *see also Wal-Mart*, 564 U.S. at 350 ("What matters to class certification . . . is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation."). *Wal-Mart* recently clarified that "[c]ommonality requires the plaintiff to demonstrate the class members 'have suffered the same injury.'" *Id.* (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982)). The proposed class members here have all suffered the same injury—they were allegedly compensated as independent contractors when they should have been compensated as employees. Plaintiff argues that "common questions of fact and law exist as to Luviano and all ITs, and as between the members." (Class Action Motion at 15.) In so arguing, Plaintiff relies on Evelyn Carlson's stricken Declaration. (*See id.*) Even disregarding the stricken portions of Carlson's declaration, however, the Court finds that Plaintiff's offered evidence demonstrates that common questions of law and fact exist here.

TWC Defendants argue that Plaintiff has failed to show that: (1) "even a single factor of the joint employment[15] analysis is capable of resolution through common

---

[15] TWC Defendants argued that because Plaintiff had "failed to provide analysis or evidence as to the joint employment issue in his opening brief, Plaintiff is not permitted to make that argument for the first

| Case No. | **CV 15-05592 BRO (FFM)** | Date | January 3, 2017 |
|---|---|---|---|
| Title | **L. LUVIANO V. MULTI CABLE, INC. ET AL** | | |

proof," (TWC Class Opp'n at 14); (2) "Plaintiff . . . fails to affirmatively demonstrate that the issue of whether each MCI [sic] was misclassified as a 'faux independent contractor' can be proven on a classwide basis," (TWC Class Opp'n at 16); and, (3) a determination of liability would involve highly individualized issues[16] that cannot be resolved through common proof," (TWC Class Opp'n at 16). Thus, TWC Defendants reason, "Plaintiff [is] unable to satisfy Rule 23(a)'s 'commonality' requirement . . . ." (TWC Class Opp'n at 16.)

At the class certification stage, this Court considers the merits of the joint-employer and Cal. Lab. Code § 2810.3 issues only to the limited extent necessary to determine whether Plaintiff has met the Rule 23 requirements for certification. *See Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1133 (9th Cir. 2016). With respect to joint employment, Plaintiff has demonstrated a number of common mechanisms by

---

time in his reply brief." (TWC Class Opp'n at 15.) TWC Defendants also filed an Ex Parte Application to strike portions of Plaintiff's Class Action Reply and Collective Action Reply briefs. (*See* Dkt. No. 131.) After reviewing the Class Action and Collective Action Reply briefs, the Court struck select portions of the Replies. (Dkt. No. 135.)

Then, at the hearing on the Collective Action and Class Action Motions, the parties further disputed whether Plaintiff had met his burden of showing that these issues can be resolved on a class-wide basis. Plaintiff's counsel correctly asserted that the use of a particular term (here "joint employer") was not necessary to substantively satisfy the requirement of establishing that the issue may be resolved on a class-wide basis. A party is not required to use talismanic phrases in order to address a particular issue. *See, e.g., Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1141 (9th Cir. 2003) (explaining that no talismanic words were required in a contract where neither statute nor case law required any specific wording); *United States v. Estrada*, 31 F. App'x 158 (5th Cir. 2001) (declining to require counsel to recite talismanic words, so long as counsel's words were sufficient for the court to comprehend); *Nagem v. Am. Nat. Prop. & Cas. Co.*, 156 F.3d 181 (5th Cir. 1998) (declining to decline to impose the recitation of talismanic words to satisfy the requirements of a statute that did not mandate any particular form or language). Accordingly, the Court addresses those substantive points raised by Plaintiff in his opening briefs with respect to the necessary threshold determination as to whether these key issues may be determined on a class-wide basis.

[16] TWC Defendants identify training, hiring of helpers, attendance at weekly meetings, billing report requirements, meal break reporting, and uniform characteristics as examples of individualized issues in this case. (*See* Class Action Opp'n at 16.)

---

| Case No. | **CV 15-05592 BRO (FFM)** | Date | January 3, 2017 |
|----------|---------------------------|------|-----------------|
| Title | **L. LUVIANO V. MULTI CABLE, INC. ET AL** | | |

which TWC Defendants allegedly controlled the actions of ITs. Such mechanisms include the I&R system, as well as a "Time Warner Cable Installation Manual," which states in relevant part that "the contents of this manual apply to Time Warner Cable employees and contractors alike."[17]  (Dkt. No. 81-1, Harris Decl., Ex. 9.)

The Court finds that Plaintiff's argument and evidence suffices to establish that central aspects of the "joint employer" theory can be determined on a common basis; the inquiry need not devolve into individualized investigation of how each IT interacted with TWC Defendants.  Rather, Plaintiff's evidence shows that TWC Defendants may have widely used certain control mechanisms, such that a determination with respect to these particular wide-reaching control mechanisms may address the issue of whether TWC Defendants acted in a manner that would lead a reasonable IT to believe that TWC Defendants supervised, or otherwise exerted control over the ITs work.  *Cf. Martinez v. Combs*, 49 Cal. 4th 35, 76, 231 P.3d 259, 287 (2010), as modified (June 9, 2010) ("No evidence suggests Munoz's employees viewed the field representatives as their supervisors or believed they owed their obedience to anyone but Munoz and his foremen.")

With respect to the Cal. Lab. Code § 2810.3 issue, TWC Defendants maintain that they are not "client employers" within the meaning of Section 2810.3.  The statute defines a "client employer" as an entity "that obtains or is provided workers to perform labor within its usual course of business from a labor contractor." Cal. Lab. Code § 2810.3(a)(1)(A).  "Usual course of business" means the "regular and customary work of a business, performed within or upon the premises or worksite of the client employer." *Id.* § 2810.3(a)(6).  The Plaintiff avers in his Class Action Motion that ITs "were provided, serially, to [TWC Defendants], by [MCI Defendants], the [MCI Defendants] having contracted with the TWC Defendants to provide ITs to TWC in order for TWC to install equipment at the homes of its residential customers."  (*See* Class Action Motion at ii, 5.)  Plaintiff also alleges that TWC Defendants required ITs to wear particular uniforms.  (Class Action Motion at 2.)  In support of these assertions, Plaintiff offers the testimony of Defendant Golbahar, (Dkt. No. 81-9, Ex. 238 at 105:7–9), MCI supervisor

---

[17] TWC Defendants object to the authenticity of the Manual; however, as explained above, this Court applies a more lenient evidentiary standard, which permits the Court to consider evidence that might be inadmissible at other stages of the proceedings.  *See* discussion *supra* Section III.

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 15-05592 BRO (FFM) | Date | January 3, 2017 |
|---|---|---|---|
| Title | L. LUVIANO V. MULTI CABLE, INC. ET AL | | |

Marco Ponce, (*see* Dkt. No. 81-9, Ex. 242 at 35:10–18), and the "Time Warner Cable Installation Manual," which states that "the contents of this manual apply to Time Warner Cable employees and contractors alike." (Dkt. No. 81-1, Harris Decl., Ex. 9.)

The Court finds that a limited inquiry into the § 2810.3 issue shows that Plaintiff has satisfied his burden of demonstrating that TWC Defendants' status as a client employer under Cal. Lab. Code § 2810.3 can be resolved on a class-wide basis. The issue of whether TWC Defendants obtain or are provided workers to perform labor within their usual course of business does not require an individualized inquiry into the circumstances of each potential class member. Rather, such a determination can be accomplished by a common inquiry into TWC Defendants' operations, spanning whether TWC Defendants, in their usual course of business, obtain or are provided workers from a labor contractor. With respect to the narrower § 2810.3(p) issue of whether putative class members wore TWC uniforms; an inquiry into TWC Defendants' training and business practices for work dress could yield an answer that resolves the issue for a host of putative class members at once. Finally, a particularized inquiry into whether individual class members complied with the 30-day notice requirement under § 2810.3 would be relatively straightforward and not so unmanageable as to necessitate a conclusion that the § 2810.3 issue cannot be resolved in large part on a class-wide basis.

In sum, a common legal question forms the core of each of the putative class members' claims for damages; namely, whether putative Class members were misclassified, in light of yet unknown facts, as independent contractors. *Cf. Shepard v. Lowe's HIW, Inc.*, 2013 WL 4488802 (N.D. Cal. Aug. 19, 2013) ("The Court agrees: the question of whether the installers are free from control and direction as a matter of contract, rather than in fact, is common to all."). The resolution of that question will require an inquiry into not only individual interactions between a putative class member and a single representative of MCI or TWC. Beyond the core legal question, common factual questions could include: (1) whether the telephone ratings system caused systemic depression of ITs wages; (2) which training practices and policies TWC Defendants and MCI implemented with regard to ITs; (3) whether ITs were required to wear TWC or MCI uniforms; (4) what information ITs' wage statements consistently included; (5) the nature and scope of the underlying contracts between ITs and MCI/TWC Defendants; and, (6) whether TWC Defendants actually exercised control over ITs daily work

| Case No. | CV 15-05592 BRO (FFM) | Date | January 3, 2017 |
|---|---|---|---|
| Title | L. LUVIANO V. MULTI CABLE, INC. ET AL | | |

activities. The evidence provided by Plaintiff at this time suffices to satisfy the commonality requirement for the designated Class.

### c.     Typicality

To demonstrate typicality, the putative class must show that the named parties' claims are typical of the class. Fed. R. Civ. P. 23(a)(3). "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (citation omitted). "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; [but] they need not be substantially identical." *Flo & Eddie*, 2015 WL at *9 (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)).

Plaintiff argues that he is "a member of each of the proposed Classes and is therefore typical." (Class Action Motion at 16.) Further, Plaintiff explains that neither he "nor any other ITs received proper wage statements,[18] were provided meal and rest breaks . . ., nor enjoyed reimbursement of their business expenses . . . ." (*Id.*) Accordingly, Plaintiff asserts, his claims are "typical of those of all Class members because they arise from the **same** course of conduct that constitutes violations of the Code." (Class Action Motion at 16 (emphasis in original).)[19]

MCI Defendants respond that Luviano's claims and the defenses thereto are not typical because: (1) Luviano allegedly already settled a portion of any potential liability here; and, (2) some putative class members are bound by arbitration agreements.[20] (MCI

---

[18] Specifically, Plaintiff claims that he and other class members worked subject to the same policies "which never paid them overtime wages," and "issued [wage statements] which never provided the total hours worked . . . ." (Class Action Motion at 17.)

[19] TWC Defendants do not explicitly contest Plaintiff's arguments in support of typicality. The Court is mindful, however, of TWC Defendants assertions that Plaintiff's and other ITs' factual circumstances are disparate. (Class Action Opp'n at 16.)

[20] More specifically, MCI Defendants argue that, while Luviano claims he did not sign a mutual agreement to arbitrate, "there are at least 38 members of the putative class whose claims are subject to a

| Case No. | **CV 15-05592 BRO (FFM)** | Date | January 3, 2017 |
|----------|---------------------------|------|-----------------|
| Title | **L. LUVIANO V. MULTI CABLE, INC. ET AL** | | |

Class Opp'n at 12–13.)  With regard to settlement, MCI Defendants explain that they "settled a prior wage and hour class action suit filed on behalf of a class of its technicians in 2013." (*Id.* at 12.)  MCI Defendants claim that a "Lamberto Serrano Silva" was a member of the *Mawyin v. Multi Cable, Inc.* lawsuit and did not opt out of the settlement. (*Id.*)  Thus, MCI Defendants contend that Plaintiff's claims from June 23, 2011, until November 5, 2013, (the date of approval of the preliminary settlement in *Mawyin*) are barred.  (*Id.*)

Plaintiff replies that the individual issue of whether Luviano was a member of the *Maywin* settlement "is an issue which goes merely to the magnitude of damages."[21] (Class Action Reply at 17.)  Plaintiff also argues that putative class members' alleged signature of arbitration agreements "does not bar class certification." (Class Action Reply at 17 (citing *Herrera v. LCS Fin. Servs. Corp.*, 274 F.R.D. 666, 681 (N.D. Cal. June 1, 2011)).)  Finally, Plaintiff asserts that the arbitration agreement contained an "unlawful prohibition against representative actions, rendering the entire agreement invalid." (Class Action Reply at 18.)

---

mandatory arbitration agreement, under which they agreed to waive any right to go to court or to try claims before a jury." (MCI Class Opp'n at 13 (citing Dkt. No. 113-1, Kelly Decl. ¶ 6).)  As a result, MCI Defendants conclude that "[w]hile the enforceability and effect of the arbitration clauses are not presently before the Court, Luviano asserts claims that many of the purported class members may be barred from bringing in this Court." (MCI Class Opp'n at 13.)  At this time, the Court has insufficient information to determine the merits of MCI Defendants' proposed defense.  Nor is it appropriate for the Court to reach the merits of Defendants' defenses at the class certification stage.  *See Torres*, 835 F.3d at 1133.  And as MCI Defendants note, the merits of the defense depend on the enforceability and effect of the alleged arbitration clauses.

[21] The Court notes that if Plaintiff is shown to be a member of the *Maywin* settlement, his interests could be misaligned with those of the putative Class.  For example, if the *Maywin* settlement precludes members of the settlement from litigating claims arising in the first two years of the Class Period, Plaintiff may be precluded from vigorously arguing on behalf of the class for damages arising out of policies or practices that occurred during those particular years.  At the hearing on this matter, Plaintiff's counsel explained that the evidence supporting the existence of arbitration agreements was speculative, and that Plaintiff Luviano's signature on an arbitration agreement had allegedly been forged.  (*See* Hearing Tr. at 22:4–23:5.)  The argument and evidence offered by the parties here is insufficient to prevent certification.

| Case No. | CV 15-05592 BRO (FFM) | Date | January 3, 2017 |
|---|---|---|---|
| Title | L. LUVIANO V. MULTI CABLE, INC. ET AL | | |

Here, the Court finds that Plaintiff's claim arises from the same underlying event, practice, or course of conduct as the claims of the absent, putative class members' claims; namely, Defendants' alleged misclassification of ITs as independent contractors rather than employees. This broad misclassification is based on allegedly common, underlying practices and conduct such as (1) conducting trainings for ITs, (2) requiring Plaintiff and other putative class members to wear particular uniforms and orally represent themselves as TWC employees, and (3) administering a training manual that allegedly governed employees and contractors alike. (Harris Decl. ¶ 13.)

Moreover, both Plaintiff and the putative class members allege an economic harm arising from various forms of depressed compensation over a period of months or years. And although some putative class members may not have suffered every manifestation of compensation depression alleged, the Plaintiff's and putative class members' claims are sufficiently co-extensive because they arise, in part, out of a course of conduct that began with the signing of similar contracts for provision of installation services. Accordingly, the Court finds that Plaintiff's claims are typical of the designated Class's putative class members' claims.

### d. Adequacy

Rule 23(a)(4) requires plaintiffs to show that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Representation is adequate when the class representative and counsel do not have any conflicts of interest with other class members, and the representative plaintiff and counsel will prosecute the action vigorously on behalf of the class. *Flo & Eddie,* 2015 WL at *10 (citing *Evon v. Law Offices of Sidney Mickell,* 688 F.3d 1015, 1031 (9th Cir. 2012)).

"The honesty and credibility of a class representative is a relevant consideration when performing the adequacy inquiry because an untrustworthy plaintiff could reduce the likelihood of prevailing on the class claims." *Harris v. Vector Mktg. Corp.*, 753 F. Supp. 2d 996, 1015 (N.D. Cal. 2010) (quoting *Searcy v. eFunds Corp.*, 2010 WL 1337684, at *4 (N.D. Ill. Mar. 31, 2010)); *see also CE Design LTD. v. King Architectural Metals, Inc.*, 637 F.3d 721, 726 (7th Cir. 2011) ("A named plaintiff who has serious credibility problems . . . may not be an adequate class representative."). "[A] plaintiff with credibility problems may be considered to have interests antagonistic to the class."

| Case No. | CV 15-05592 BRO (FFM) | Date | January 3, 2017 |
|----------|----------------------|------|-----------------|
| Title | L. LUVIANO V. MULTI CABLE, INC. ET AL | | |

*Ross v. RBS Citizens, N.A.*, 2010 WL 3980113, at *4 (N.D. Ill. Oct. 8, 2010). "The honesty and credibility of a class representative is a relevant consideration when performing the adequacy inquiry because an untrustworthy plaintiff could reduce the likelihood of prevailing on the class claims." *See, e.g., Hovel v. Boiron, Inc.*, No. 11–cv–10803, 2014 U.S. Dist. LEXIS 35908, at *7 (C.D. Cal. Feb. 27, 2014) (citing *Harris*, 753 F. Supp. 2d at 1015). However, "[c]redibility problems do not automatically render a proposed class representative inadequate." *Harris*, 753 F. Supp. 2d at 1015 (citation and quotation marks omitted). If the credibility issues are only general in nature and do not relate directly to material issues in the lawsuit, courts will not find a lead plaintiff inadequate. *Jovel v. Boiron, Inc.*, No. 11-CV-10803-SVW-SHX, 2014 WL 1027874, at *3 (C.D. Cal. Feb. 27, 2014).

Plaintiff argues that he has "no interests that are adverse to, or which conflict with, the interests of the absent members of the Class . . . ." (Class Action Motion at 18.) Moreover, Plaintiff argues that where an issue like his credibility is considered, this court should find "inadequacy only where the representative's credibility is questioned on issues directly relevant to the litigation or there are confirmed examples of dishonesty, such as a criminal conviction or fraud." (Class Action Motion at 18 (citing *Balasanyan v. Nordstrom, Inc.*, 294 F.R.D. 550, 563 (S.D. Cal. 2013)).) Moreover, Plaintiff argues that his counsel is "experienced, qualified and competent" and "committed to vigorously prosecuting this class action." (Class Action Motion at 19 (citing Luviano's Decl. ¶ 19).) Plaintiff adds that his "counsel are knowledgeable of the applicable law and will discharge their duty to 'fairly and adequately represent the interests of the class.'" (Class Action Motion at 19 (citing Fed. R. Civ. P. 23(g)(4)).)

TWC Defendants contend that Plaintiff is not an adequate representative because "he knows nothing about this case or his responsibilities as a class representative, nor has he even read the agreements he executed with MCI."[22] (TWC Class Opp'n at 18.)

---

[22] The Ninth Circuit has explained that the adequacy requirement demands merely that a class representative understand his duties and be willing and able to perform them. *See Local Joint Exec. Bd. of Culinary/Bartender Tr. Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001). The Court finds that Plaintiff Luviano understands his role in representing other ITs who had similar interactions and experiences with TWC Defendants and MCI Defendants during the time period that he worked for Defendants. (*See* Dkt. No. 108-3, Luviano Dep. 74:10–19 ("I'm representing the other fired

| Case No. | **CV 15-05592 BRO (FFM)** | Date | January 3, 2017 |
|---|---|---|---|
| Title | **L. LUVIANO V. MULTI CABLE, INC. ET AL** | | |

Further, as Plaintiff anticipated, TWC Defendants argue that "Luviano lacks integrity" because he "obtained his position with MCI through fraud, masquerading as 'Lamberto Serrano,' and using a fake driver's license, a falsified social security number and fake insurance documents." (TWC Class Opp'n at 18.) TWC Defendants also allege that Luviano had two DUIs and "concealed [these] from MCI in violation of MCI policy." (*Id.*) Defendants also contend that Luviano "was caught lying on multiple occasions" during his deposition. (*Id.* at 18–19.)

Additionally, TWC Defendants claim that Plaintiff's Counsel is inadequate to represent the class. TWC Defendants maintain that:

> serious issues . . . preclude Plaintiff's counsel from serving as class counsel, including, without limitation: (1) self-help 'discovery' that rises to the level of hacking and potential criminal violations; (2) clear conflicts of interest with the putative class; (3) concealing witnesses in clear violation of their discovery obligations; and (4) being unable to define a proper class and filing certification motions that fail to address, and thus waive, class certification as to TWC on a joint employer theory.

(TWC Class Opp'n at 19–20.)

Here, the Court finds that the credibility issues raised by TWC Defendants are well founded. Plaintiff Luviano's employment background, fraudulent identification, social security record, and insurance documentation, may negatively impact the likelihood of the putative class prevailing on its claims. But the Court does not find Plaintiff Luviano's inadequacy renders the representation as a whole inadequate; an inadequate representative plaintiff may be replaced. *See Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 476 (C.D. Cal. 2012) (citing *Nat'l Fed'n of Blind v. Target Corp.,* 582 F.Supp.2d 1185, 1209 (N.D. Cal. 2007)) ("[T]he court may certify the class conditioned upon the substitution of another named plaintiff."); *In re Currency Conversion Fee Antitrust Litig.*, No. M 21-95, 2005 WL 3304605, at *6 (S.D.N.Y. Dec. 7, 2005) ("Courts routinely allow the replacement of class representatives."). And Plaintiff's Counsel have

---

people . . . . The *technicians* who were *unfair treating* [sic] like me, like I was *when I was working with them*." (emphasis added)).)

| Case No. | CV 15-05592 BRO (FFM) | Date | January 3, 2017 |
|---|---|---|---|
| Title | L. LUVIANO V. MULTI CABLE, INC. ET AL | | |

prosecuted the action vigorously to this date. Further, as the Court discussed in its Order Re Motion to Disqualify Plaintiff's Counsel, (Dkt. No. 133 at 15), the Court finds that Defendants have not sufficiently shown bad faith on Plaintiff's Counsel's part in conducting discovery. Similarly, the conflicts of interest alleged do not preclude Plaintiff's Counsel from here serving as an adequate representative of the putative class. (*See id.* at 14.)

The Court has no evidence that Plaintiff and his counsel would fail to prosecute the action vigorously on behalf of the class. Further, no conflicts of interest are apparent between Plaintiff and other class members. However, due to Plaintiff Luviano's credibility issues, the Court conditions certification of the designated class upon satisfactory substitution of an adequate, credible representative plaintiff.

### 3.    Rule 23(b)

Rule 23(b) can be satisfied in one of three ways. In cases like this one, where plaintiffs assert individualized monetary claims, certification is properly considered under Rule 23(b)(3). *Wal-Mart*, 564 U.S. at 361. Certification under this provision is appropriate where: (1) common questions "predominate over any questions affecting only individual members"; and, (2) class resolution is "superior to other available methods for the fair and efficient adjudication of the controversy." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997) (internal quotation marks omitted). For the following reasons, the Court finds that common questions predominate and a class action is the superior method of resolving the putative Class's claims.

Rule 23(b)(3) requires a showing that "questions of law or fact common to class members predominate over any questions affecting only individual members." *Amgen, Inc. v. Conn. Ret. Plans & Tr. Funds*, 133 S. Ct. 1184, 1209–10 (2013). The predominance inquiry "tests whether [the] proposed classes are sufficiently cohesive to warrant adjudication by representation" and "trains on the legal or factual questions that qualify each class member's case as a genuine controversy." *Amchem Prods.*, 521 U.S. at 623. In doing so, it "focuses on the relationship between the common and individual issues" of the class. *Hanlon*, 150 F.3d at 1022; *see also Local Joint Exec. Bd.*, 244 F.3d at 1162. In other words, "[w]hen common questions present a significant aspect of the case and they can be resolved for all members of the class in a single

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

LINK:

| Case No. | CV 15-05592 BRO (FFM) | Date | January 3, 2017 |
| Title | L. LUVIANO V. MULTI CABLE, INC. ET AL | | |

adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022 (quoting 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 1778 (2d ed. 1986)).

"Though there is substantial overlap between [the Rule 23(a)(2) commonality test and the Rule 23(b)(3) predominance test], the Rule 23(b)(3) test is far more demanding[.]" *Wolin*, 617 F.3d at 1172 (internal quotation marks omitted). "The predominance analysis under Rule 23(b)(3) focuses on the relationship between the common and individual issues in the case and tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 545 (9th Cir. 2013) (internal quotation marks omitted). Nevertheless, predominance does not require that the legal and factual issues be identical across the class. Certification is proper where "[a] common nucleus of facts and potential legal remedies dominates [the] litigation." *Id.*

### a.    Common Questions Predominate

In all wage and hour cases, liability and damages depend on the employees' actual wages and hours. *Kamar v. Radio Shack Corp.*, 254 F.R.D. 387, 402 (C.D. Cal. 2008), *aff'd sub nom. Kamar v. RadioShack Corp.*, 375 F. App'x 734 (9th Cir. 2010). Differences in wages and hours often do not prevent class certification, if there are ways to avoid testimony by every class member. *Id.* Indeed, the Ninth Circuit has suggested that variation in actual wages is a relatively easy issue, where the employer has payroll records that would indicate the actual compensation that each employee received. *See id.* (citing *Local Joint Executive Bd.*, 244 F.3d at 1163).

In contrast, courts have been more hesitant to certify wage and hour classes where key facts could not be discerned through routine business records, such as where claims to overtime compensation depended on employees' actual duties which differed among employees within the class, or where claims to unpaid meal and rest break premiums depended on whether employees actually took the mandated break. *See, e.g., Jimenez v. Domino's Pizza, Inc.*, 238 F.R.D. 241, 251 (C.D. Cal. 2006) (dealing with need to determine individually employees' non-exempt status); *Brown v. Federal Express Corp.*,

LINK:

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 15-05592 BRO (FFM) | Date | January 3, 2017 |
|---|---|---|---|
| Title | L. LUVIANO V. MULTI CABLE, INC. ET AL | | |

249 F.R.D. 580, 587 (C.D. Cal. 2008) (dealing with need to determine individually whether FedEx's policies actually prevented employees from taking required breaks).

MCI Defendants contend that "[Luviano] cannot show that common issues predominate over the need for individual inquiry, both as to liability and damages" because "the facts . . . demonstrate the technicians' working conditions varied significantly depending on the individual technicians' [sic] own knowledge, experience, motivation and personal work ethic." (MCI Class Opp'n at 9.) MCI Defendants also argue that "the record is replete with evidence of the technician's [sic] different work experiences re hiring, training, paying and charging back technicians for substandard work and the day-to-day operations." (MCI Class Opp'n at 11.) MCI Defendants add that "Luviano presents no substantial evidence that Defendants employed any common policy or routine practice to deny proposed class members of meal and rest breaks." (*Id.*) TWC and MCI Defendants have offered a number of declarations by former ITs that evidence differences in the particular experiences of ITs, such as whether they were required to wear uniforms and whether TWC Defendants trained them. (*See* Dkt. 106-1.)

Nonetheless, the question whether Defendants engaged in activity that violated putative plaintiffs' rights is resolvable on a class-wide basis because MCI and/or TWC Defendants likely did not create unique contracts, training, billing reporting requirements, break reporting requirements for each IT; Plaintiff has offered evidence that members of the designated Class engaged in substantially the same work activities on a daily basis. Plaintiff's evidence shows that ITs attended weekly warehouse meetings, picked up supplies, and reviewed their assignments in the morning most days. (Dkt. No. 89, Luviano Decl. ¶¶ 3–5.) Importantly, between 2011 and mid-2015 (when MCI began paying ITs as employees), all ITs entered form contracts with MCI.[23] (Dkt. No. 81-9, Ex. 238 at 256:9–15; Harris Decl., DX 41 "Contract for Cabling Project Services".) Also, MCI Defendants explain that the compensation structure for each of the ITs was similar. (*See* MCI Collective Opp'n at 8–10.) Thus, while putative Class members' experiences may have varied with respect to particular aspects of ITs' work, their experiences are commonly defined by similar contracts, work assignment practices, quality control

---

[23] On November 21, 2016, at the hearing on this matter, Plaintiff's counsel represented that the particular contract between Plaintiff Luviano and MCI was representative of the agreements most ITs signed with MCI. (*See* Hearing Tr. at 20:10–18.)

| Case No. | CV 15-05592 BRO (FFM) | | Date | January 3, 2017 |
|----------|------------------------|---|------|------------------|
| Title | **L. LUVIANO V. MULTI CABLE, INC. ET AL** | | | |

practices, and compensation structures.  The Court finds that common questions predominate here.

### b.    Superiority

Rule 23(b)(3) also requires courts to determine whether "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  In the superiority analysis, courts consider the following non-exhaustive factors: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and, (D) the likely difficulties in managing a class action."  Fed. R. Civ. P. 23(b)(3).

MCI Defendants argue that "the presence of individual damages issues compels the denial of certification" because "'the issue of damages does not lend itself to . . . mechanical calculation, but requires separate mini-trials[s] of an overwhelming large number of individual claims . . . .'" (MCI Class Opp'n at 15–16 (citing *Windham v. Am. Brands, Inc.*, 565 F.2d 59, 67–69 (4th Cir. 1977)).)  But MCI Defendants' argument is inapposite here because individualized damages calculations alone do not defeat certification; class actions may still be the superior method for resolving putative class members' claims where individual potential for monetary recovery is small.  *Leyva v. Medline Industries Inc.*, 716 F.3d 510, 513–15 (9th Cir. 2013); *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 409 (2nd Cir. 2015).  MCI Defendants also contend that individual class members have a substantial interest in controlling their own separate litigation, because class members may be entitled to "large individual damage claims." (MCI Class Opp'n at 16.)

The 23(b)(3) factors favor classwide resolution of Plaintiff's claims.  In a class action of this type involving wage/hour claims and other employment-related harms, injured workers are unlikely to pursue their claims on an individual basis, due to the expense that would fall on individual class members if each class member had to provide analysis and expert testimony on the common factual questions that are intertwined with the legal question of mischaracterization.  *See Leyva*, 716 F.3d at 515 ("In light of the

| Case No. | CV 15-05592 BRO (FFM) | Date | January 3, 2017 |
|----------|----------------------|------|-----------------|
| Title | L. LUVIANO V. MULTI CABLE, INC. ET AL | | |

small size of the putative class members' potential individual monetary recovery, class certification may be the only feasible means for them to adjudicate their claims.").

Further, the class members' interest in individually controlling prosecution of separate actions is not so substantial as to weigh against certification here. The factual and legal questions an individual plaintiff would need to litigate are substantially similar with those the putative class could resolve on a common basis. And the substantial interest MCI Defendants raise relates to the number of hours of overtime, meal and rest breaks denied. The calculation of damages in wage-hour actions may require an individualized inquiry; but this portion of each putative Class member's claim may be resolved separately after a proceeding regarding the common factual and legal issues. *Cf. Leyva*, 716 F.3d at 513 ("But damages determinations are individual in nearly all wage-and-hour class actions."); *Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir. 1975) ("The amount of damages is invariably an individual question and does not defeat class action treatment."). The number of putative class members here appears to be between fifty and one hundred[24] – sufficient for certification of a class, but not so large as to be unmanageable. *See Schwarm v. Craighead*, 233 F.R.D. 655, 660 (E.D. Cal. 2006) (certifying a class of "thousands of potential plaintiffs"). Finally, this forum is appropriate for the resolution of such claims. In sum, class certification is the superior method of adjudication of Plaintiff's and putative Class members' claims.

### C. Plaintiff's Motion for Certification of a Collective Action

Under the first step, the Court is to make an initial "notice-stage" determination of whether potential opt-in plaintiffs are "similarly situated" to the representative plaintiffs. *Lillehagen v. Alorica, Inc.*, No. SACV 13-0092-DOC, 2014 WL 2009031, at *3 (C.D. Cal. May 15, 2014*)*. The purpose of this initial step is to determine whether a collective action should be certified for the sole purpose of sending notice of the action to potential class members. *Id.*; *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1530 (2013) ("The sole consequence of conditional certification is the sending of court-approved written notice to employees, who in turn become parties to a collective action only by filing written consent with the court." (internal citations omitted)). Courts are to apply a

---

[24] *See* discussion *supra* Section V.B.2.a.

| Case No. | CV 15-05592 BRO (FFM) | Date | January 3, 2017 |
|----------|------------------------|------|-----------------|
| Title | L. LUVIANO V. MULTI CABLE, INC. ET AL | | |

"fairly lenient standard" for certification at this stage, which typically results in certification. *Daniels v. Aeropostale W., Inc.*, No. C 12-05755 WHA, 2013 WL 1758891, at *2 (N.D. Cal. Apr. 24, 2013). Moreover, "[a]t this stage of the analysis, courts usually rely only on the pleadings and any affidavits that have been submitted." *Leuthold*, 224 F.R.D. at 468. And Plaintiff need not conclusively establish that collective action is proper, as Defendant "will be free to revisit this issue at the close of discovery." *Lillehagen*, 2014 WL 2009031, at *3.

## 1.    The Notice-Stage Standard Applies Here

Plaintiff is seeking conditional certification of his FLSA Class under the first step of the two-step analysis for "those ITs who were paid by the Defendants as 'independent contractors' rather than employees, and who were never paid the appropriate overtime wages owing to piece rate workers." (Collective Action Motion at 3.) In particular, Plaintiff "seeks to represent all ITs who, at any time during the three years preceding the filing of the Complaint to the date of the ruling on this motion, worked as independent contractor ITs for [Defendants]." (*Id.*) The first step of this circuit's two-step analysis, as explained above, requires only that Plaintiff demonstrate that "some identifiable factual or legal nexus binds together the various claims of the class members in a way that hearing the claims together promotes judicial efficiency and comports with the broad remedial policies underlying the FLSA." *Russell*, 2008 WL 4104212, at *5.

MCI Defendants argue that this Court should apply a heightened, intermediate standard, rather than the lenient conditional certification standard because the parties have exchanged initial disclosures, exchanged several discovery requests, and completed twelve depositions. (MCI Collective Opp'n at 5.) The Court concludes that adopting the first-stage analysis is appropriate because discovery is not yet complete. (*See* Dkt. No. 76 (reflecting that discovery cut-off date is May 15, 2017).) Courts in the Ninth Circuit generally decline to reach the more rigorous, second-stage analysis before the close of discovery. *See, e.g.*, *Kress*, 263 F.R.D. at 629 ("Courts within this circuit ... refuse to depart from the notice stage analysis prior to the close of discovery."); *Villa v. United Site Servs. of California, Inc.*, No. 5:12–CV–00318–LHK, 2012 WL 5503550, at *13 (N.D. Cal. Nov. 13, 2012) (applying first-stage analysis where "discovery is still ongoing"). Moreover, although discovery has proceeded in this case, the Court notes that Plaintiff alleges that Defendants committed Rule 26 violations by failing to disclose key

**LINK:**

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 15-05592 BRO (FFM) | Date | January 3, 2017 |
|---|---|---|---|
| Title | L. LUVIANO V. MULTI CABLE, INC. ET AL | | |

witnesses upon which Defendants rely in their opposition. (*See* Dkt. No. 129.) Thus, the Court recognizes that additional discovery may be necessary in this case. Accordingly, the Court will determine whether it should conditionally certify the class for the purpose of providing notice.

## 2. Consideration of Section 7(i) Defense Is Premature

The initial "notice stage" is not the appropriate time for a court to evaluate the merits of plaintiffs' FLSA claims. *Shaia v. Harvest Mgmt. Sub LLC*, 306 F.R.D. 268, 272 (N.D. Cal. 2015). Thus, "courts routinely hold that the potential applicability of an FLSA exemption does not preclude conditional certification." *Id.* (citing *Benedict v. Hewlett–Packard Co.*, 2014 WL 587135, at *11 (N.D. Cal. Feb. 13, 2014)). Even if plaintiffs eventually do not prevail on their FLSA claim because they are subject to exemptions, "a collective action should still be certified if they are similarly situated." *Id.* (citing *Stanfield v. First NLC Fin. Servs., LLC*, 2006 WL 3190527 at *4 (N.D. Cal. Nov. 1, 2006)).

MCI Defendants argue that "[i]n a [section] 7(i) case, there is no liability without conducting individualized analyses of whether each individual's total pay divided by total hours of work is less than [one and one-half times the minimum wage]." (MCI Collective Opp'n at 12.) "[D]etermining whether the § 7(i) defense applies to members of the putative class would require a highly individualized inquiry and could not be accomplished by common proof." *Beauperthuy v. 24 Hour Fitness USA, Inc.*, 772 F. Supp. 2d 1111, 1126 (N.D. Cal. 2011). But, as district courts in this Circuit have explained, "whether plaintiffs actually meet the criteria of an FLSA exemption is irrelevant to a determination of whether they are similarly situated." *Beauperthuy*, 772 F. Supp. 2d at 1127 (citing *Pfohl v. Farmers Ins. Group*, 2004 U.S. Dist. LEXIS 6447 at *27 n. 5 (C.D. Cal. Mar. 1, 2004)). And more importantly, at this stage, the "potential applicability of an FLSA exemption does not preclude conditional certification." *See Harvest Mgmt.*, 306 F.R.D. at 272. Thus, the Court will not consider the merits of Defendants' section 7(i) defense here.

| Case No. | CV 15-05592 BRO (FFM) | Date | January 3, 2017 |
|---|---|---|---|
| Title | L. LUVIANO V. MULTI CABLE, INC. ET AL | | |

**3.      Consideration of Joint Employer and Independent Contractor
Tests is Premature**

TWC Defendants also argue that because Plaintiff failed to "set forth the test for distinguishing between an independent contractor and an employee," Plaintiff thus "fail[ed] to show that the collective class is similarly situated with respect to the issue of whether each [TI] was misclassified as a 'faux independent contractor.'"  (TWC Collective Opp'n at 17.)  Like the section 7(i) defense, the joint employer and independent contractor issues need not be considered at this time.  While such issues may be central in determining the merits of the instant action, these issues are more appropriately considered at the second step of scrutiny of a proposed collective action.

**4.      Plaintiff's Allegations Suffice to Satisfy *Similarly-Situated*
Requirement**

The question on a conditional certification motion is simply whether plaintiffs have made "substantial allegations" that the putative class members were subject to an illegal policy, plan, or decision, by showing that there is some factual basis beyond the "mere averments" in the complaint for the class allegations.  *See Gounev v. Delta Mech., Inc.*, No. 13-CV-1857 JLS (JMA), 2015 WL 11658711, at *9 (S.D. Cal. July 24, 2015) (conditionally certifying collective action where "all Installers had the same job duties, were compensated according to a uniform pay structure, received job assignments via DMI's scheduling system, and were required to sign the same "Independent Contractor" agreement with DMI when they were hired."); *see also Daniels*, 2013 U.S. Dist. LEXIS 59514, * 6, 2013 WL 1758891.

The crux of Plaintiff's FLSA claim is that he and other putative members of the collective action are similarly situated because (1) Luviano and other ITs were misclassified as faux "independent contractors"; (2) consistently worked over forty hours per week but were not paid overtime,[25] (*see, e.g.*, Dkt. No. 85, Rodriguez Decl. ¶ 8); and, (3) have been similarly damaged because they have not received timely payment in full

_____
[25] With regard to overtime and minimum wage, Plaintiff argues that he and other ITs worked so many hours that the piece rate compensation plan did not amount to the federally mandated minimum wage. (Collective Action Motion at 13.)

LINK:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 15-05592 BRO (FFM) | Date | January 3, 2017 |
|----------|----------------------|------|-----------------|
| Title | L. LUVIANO V. MULTI CABLE, INC. ET AL | | |

of their earned wages, (*see, e.g.*, Solis Decl. ¶ 8; *see generally* Collective Action Motion at 5.)  Plaintiff asserts that "over a dozen other ITs have consented to join this action pursuant to § 216(b) of the FLSA." (Collective Action Motion at 2 (citing RJN, Ex. 16).) Plaintiff alleges that he and other ITs were not compensated for work hours outside the homes of TWC subscribers, overtime work while working for TWC subscribers in their homes, or time spent attending mandatory meetings, waiting for assignments, working in the warehouse, and picking up equipment.  (Collective Action Motion at 3–4.)

As Plaintiff argues, this factual nexus is sufficient at this stage.  The Court finds that Plaintiff's allegations, as well as the declarations by proposed members of the FLSA Class satisfy the similarly-situated requirement.  Like the Plaintiff in *Gounev*, Plaintiff argues that he and the other members of the putative class all performed similar job duties including cable installation, repair, and maintenance services for TWC and MCI defendants in connection with television, phone and internet installations.  (Collective Action Motion at 2.)  Plaintiff offers evidence that the proposed members were compensated uniformly, according to a piece-rate system, (Harris Decl. ¶ 14), a contention Defendants do not contest.  Further, the evidence shows that the proposed members uniformly received assignments via a "WorkAssure Solutions I&R Application." (Harris Decl. ¶ 23.)

Plaintiff has met his burden of showing that he and other proposed members are similarly-situated.  Defendants' contentions on the merits may be appropriately addressed at the second step.  *See Carter*, 2016 WL 5680464, at *4 ("Although XPO may dispute some of plaintiffs' allegations – for example, whether the typical Delivery Driver could or did negotiate the rates of services under the DSAs, whether the typical Delivery Driver worked exclusively or primarily for XPO, whether the typical Delivery Driver was required to wear a uniform or carry an XPO logo on their vehicle – those disputes will be considered at the "second step" of the FLSA certification process.").

## VI.    CONCLUSION

For the reasons discussed above, Defendant's Motion to Strike the Declaration of Evelyn Carlson is **GRANTED in part**; Plaintiff's Class Action Motion is **GRANTED in part**; and, Plaintiff's Collective Action Motion is **GRANTED**.